## DRAKE and others *vs.* THE HUDSON RIVER RAILROAD CO.

By an act of the legislature the Hudson River Railroad Company was authorized and empowered to construct a railway between the cities of New-York and Albany, commencing in the city of New-York, with the consent of the corporation of New-York; and the directors were authorized to locate such railroad on any of the streets or avenues of the city of New-York westerly of, and including, the Eighth avenue, and on or westerly of Hudson-street, provided the assent of the mayor and common council should be first obtained for such location. The railroad company having, with the assent of the corporation of New-York, located their railroad on and through certain streets of the city, within the district mentioned in the act, and obtained permission from the common council to lay down a double track of rails from West-street through Canal and Hudson streets to Chambers-street; *Held* that the court would not interfere by injunction to prevent the railroad company from laying down its rails in those streets, and using the same for the purposes of their railroad, upon the application of persons owning property bounded on such streets, alledging that the construction of the railroad through those streets was unauthorized by law, and a nuisance; that their property would be injured and depreciated in value, and their business seriously affected thereby; and that real estate and property vested in them by law had been taken for the location and construction of such railroad without previously making them compensation therefor.

For contingent and consequential damages of that nature, when they occur, the party aggrieved has a remedy by action at law, and by a repetition of such action from time to time during the continuance of the grievance, whenever and as often as loss or damage ensues.

And if the use of the railroad, in the streets of the city, becomes a nuisance, or the aggression proves to be permanent and without an adequate remedy at law, then the supreme court will be competent to administer its equitable relief by injunction, to prevent its continuance, or for its removal. *Per* JONES, P. J.

But a strong case must be presented, and the impending danger must be imminent and impressive, to justify the issuing of an injunction, as a precautionary and preventive remedy.

The prohibition of the constitution is against *taking* private property for public use, without making compensation; and not against *injuries* to such property, where it is not taken.

Contingent future damages, or incidental and consequential injuries, of indefinite amount, not capable of estimate, do not come within the rule.

Therefore, where it is not alledged that private property has been taken by a railroad company, for the purposes of the road, but it is claimed that it is and will be injuriously affected by erections made, and proposed to be made and used, by the company, in its vicinity, the owners have no claim to have their damages ascertained and paid for before such erections shall be constructed and used.

Drake *v.* The Hudson River Railroad Co.

A railroad is not, *per se* a nuisance. Nor is the use of a street in a city, for a railroad track, in such a manner as not to abridge or obstruct the right of passage and repassage for other purposes, such an exclusive appropriation of the street as to amount to a nuisance, or a purpresture.

Nor will the construction of a railroad through the streets of a city amount to an infringement of private rights, though the track should cause a slight change in the surface of the streets; provided the passage is left free and unobstructed for the public.

The owners of property bounded upon streets in a city have rights in such streets, and an interest in the maintenance of them in their integrity; but such right and interest consist merely in the use, benefit, and enjoyment of them as public streets or highways for the legitimate uses and purposes of streets. They have no private or exclusive right to, or property in, the use or enjoyment of them. *Per* JONES, P. J.

All other citizens have an equal right, with such owners, to the use of the public streets as such. And a railroad company, as part of that public, have the same right, in common with others, to use the same, under the rules and regulations prescribed by the proper authority, for the purposes to which the lands forming the streets were dedicated to the public, or taken by the corporation for public purposes. *Per* JONES, P. J.

*It seems* that, for the purpose of managing and regulating the public streets in the city of New-York, and the use of them for the trusts and purposes of their dedication or establishment; prescribing the width of the sidewalks and of the carriage way; licensing the partial and temporary use of parts of them for necessary private purposes; and permitting or prohibiting special uses for particular objects, &c. the legal title to the land or soil of the streets is vested in the city corporation, subject to the public use of them as public streets of the city. *Per* JONES, P. J.

And if the corporation of the city are the owners of the legal title to the soil of the streets, they are the only parties whose rights of property are violated, or whose ownership can be said to be usurped, by the construction of a railroad through such streets. And they are the only persons who can claim the right to have the rails removed, or the use of the street vindicated, or freed, from the alledged incumbrance, or the proceedings of the railroad company arrested until compensation shall be made. *Per* JONES, P. J.

THIS was an application by the plaintiffs, who represented themselves to be owners of real estate fronting upon, and bounded by, Hudson and other streets in the city of New-York, in and through which the Hudson River Railroad had been laid out, for an order or injunction restraining the defendants from laying down a double track of rails, or any track of rails, whether single or double, of any kind whatever, with suitable curves and turnouts, or otherwise, from the northerly line of Canal-street,

at West-street, through Canal and Hudson streets, to Chambers-street, or any where within the said limits, and that the said order or injunction be perpetual; and that the said defendants might be ordered to remove and take away so much of the said railroad as they had laid or caused to be laid down in Canal-street, and in any part of said route from West-street, to or near Chambers-street. The motion was founded upon the complaint of the plaintiffs, and affidavits annexed thereto; and was resisted by the defendants upon affidavits; no answer having been put in, when the motion was made. All the material facts are stated in the opinions delivered by the several members of the court.

*E. Sandford,* for the plaintiffs. 1. The legislature, in enacting the charter of the defendants, conferred a franchise upon a mere private corporation, and they had no constitutional power to authorize private property to be taken without the consent of the owners, for the use of such a corporation, even upon making full compensation.

2. The legislature had not power, under the constitution, to delegate to the defendants, a mere private corporation, any part of the sovereign power of the people of this state, to be exercised by the defendants, at their own discretion and for their own benefit. The legislature have not declared what lands shall be appropriated to the use of the defendants, nor appointed any public officers or political agents, or organs of the sovereign power, to exercise the sovereign discretion; but have left the appropriation to be made by a private corporation, acting upon the irresponsible judgment of its own agents as to what lands are necessary for the use of their road. They had no power to authorize them to take lands in fee; no power to authorize them to take materials.

3. If the defendants have, by their charter conferred upon them, the right to take private property for the uses of their railroad, such property can only be taken by them upon paying just compensation.

4. Such compensation must be made by the defendants be-

Drake *v.* The Hudson River Railroad Co.

fore the land can be taken by them for the use of their road, and before any work can be done thereupon towards the construction thereof.

5. By the charter of the defendants they are required to make compensation for all land, real estate and property taken possession of, and used for the construction and maintenance of their railroad, or which may be affected by any operation connected with such construction and maintenance.

6. The plaintiffs have an interest in the lands taken by the defendants in laying down their railroad track upon portions of Hudson-street and Canal-street, and are respectively the owners of other lands fronting on said streets, which are injuriously affected by the construction and maintenance of the road upon said streets.

7. It is not necessary to establish the claim of the plaintiffs to damages in this case, to show that the plaintiffs, or either of them, are tenants of the freehold, or legal owners of the land upon which the defendants were about to lay their iron rails. If others be the owners of the lands facing the parts of Hudson-street and Canal-street, the plaintiffs own lots fronting thereon, and have an interest in and right of passage over these lands for the purposes of their business, convenience or pleasure. This right is an incorporeal hereditament, and for the particular injury to this right and the lots of land owned by them respectively, the plaintiffs were entitled to have compensation made to them, before the defendants proceeded to lay down their rails. It is sufficient that they have some interest which will be impaired by the defendants' work, to give them a right to compensation.

8. The use which the defendants design to make of the streets in question, is wholly inconsistent with the purposes and objects of their original dedication. The plaintiffs have paid a full consideration for the right to the enjoyment of these streets to the full extent of their dimensions respectively, as originally laid out, and in the accustomed manner. They have a right to the injunction of this court, to restrain any use of the streets

Drake *v.* The Hudson River Railroad Co.

for purposes other than those originally intended, and which will impair the use and enjoyment thereof by the plaintiffs.

9. In considering the question of the rights of the plaintiffs and the damages they will suffer, from the acts of the defendants, the court can not enter upon the question, whether any public benefits may arise from the defendants' work, which might tend to counterbalance the inconvenience and injury it will produce. The violation of the rights of the plaintiffs, and the injury to their property can not be compensated nor vindicated by any benefit which another portion of the public may derive from the extension of the railway of the defendants.

10. The enclosing of Canal-street, and Hudson-street, within the rails to be laid by the defendants, and the permanent occupation thereof by the rails so laid, will constitute a *purpresture;* and the injury, inconvenience and annoyance therefrom and from the use which is intended to be made thereof by the defendants, will constitute a *nuisance.* From the injuries which will be sustained by the plaintiffs therefrom they are entitled to an injunction.

11. Under the charter of the defendants they alone can apply for the appointment of commissioners, to assess the damages. This power, given to the company, does not affect or impair any of the plaintiffs' remedies by action.

12. The defendants have no power under their charter to locate their road upon the streets in question without first obtaining the assent of the corporation of the city of New-York to such location. Such assent has not been obtained. The plaintiffs' rights will be invaded and their property injured by the illegal and unauthorized proceedings of the defendants, and they are therefore entitled to an injunction. In support of these several positions, Mr. Sandford cited numerous authorities. In reference to the unconstitutionality of the state law, he referred to the constitution of the United States, and the late and present constitution of the state of New-York; and to the case of *Bloodgood* v. *The Mohawk & Hud. Railroad Co.* (18 *Wend.* 9,) to show that the resolution there passed was not valid and binding, and was not a decision; and referred to the opinion of

Drake *v.* The Hudson River Railroad Co.

Senator Tracy in that case, as a sound exposition of the law on the subject. In respect to the necessity of prepayment of compensation, even when lands are taken for public use, he referred to the last mentioned and other decisions. To support the point that, in this case, if the defendants had a right to lay the road along the streets, they were bound to make compensation to those whose lands were affected, he referred to the charter of the company; and to prove that the plaintiffs had an interest in the streets, he referred to the terms of the several cessions, and to the act of 1813 for opening streets, and the several decisions establishing the principle that grants of lots bounded by a street convey in fact to the centre of the street.

Mr. Sandford further contended that private property could not be taken for public use, unless in case of extreme necessity; and to establish this, cited *Ruth. Inst. of Nat. Law, pp.* 41, 43. He also contended that private property could not in any case be taken for private use; and that in this case it was so taken.

In support of his various other positions, he cited numerous authorities, among which were 1 *Bald. C. C. Rep.* 230, 235, 236, 232. 3 *How. Miss. Rep.* 240. 1 *Kelly's Geo. Rep.* 524, 584. 4 *Paige,* 510, 513. 6 *Pet.* 431, 598, 513, 514. *Woolwich on Ways,* 60, 2, 53, 54. 10 *Pet.* 662, 713, 720, 723, 730, 736. 1 *Sandf.* 323, 341. 19 *Wend.* 659, 666, 675. 3 *Kent's Com.* 422, 433. 20 *Wend.* 129. 3 *Hill,* 469. 2 *Id.* 567. 5 *Id.* 170, 175, 176. 25 *Wend.* 162. 12 *Id.* 96. 9 *Id.* 576. 5 *Met.* 368. 1 *Gale & Davison,* 589. 1 *Rail. Cas.* 736. 7 *Scott's New Rep.* 835. 6 *Adol. & El.* 355. 2 *Coke's Inst.* 238. 8 *Dana,* 289, 294, 304. *The case of Hodgkinson* v. *The Long Island Railroad, not reported.* 2 *Black.* 215, 216. 2 *Dow's Par. Cas.* 519. 2 *John. Ch. Rep.* 463, 473. 1 *Barb. Ch. Rep.* 59. 5 *John.* 175. 5 *Cowen,* 165.

*C. O'Conor,* for the defendants. 1. The plaintiffs have not made out title to any part of the street. Whatever their rights are, they rest on the cession, and on the opening of the streets, under the act of 1813. On the face of the deeds to the plain-

Drake v. The Hudson River Railroad Co.

tiffs, it is a question of construction, as to whether one-half the street is also conveyed. In the country, the deeds invariably convey one-half the road; in the city, they usually exclude the street. The bill does not show that the street was included in the grants to the plaintiffs; nor that, in any description in the deeds, the streets are granted, or bounded by the lots. The framers had in mind the question of priority, to the cessions to the corporation. The case shows that the corporation of the city have become owners of the streets; and that recently Mrs. Drake has become owner on the streets. Mrs. Drake became lessee *for 99* years, in 1804, and became owner of the reversion in 1823; the cession to the corporation of the city was in 1813.

2. As to prepayment of compensation to the plaintiffs, where is the proof that they are the fee simple owners? Trinity Church had granted the streets to the corporation in fee, in trust for the whole public; and therefore she could give no further right. The plaintiffs have failed to show a title to the streets.

3. As to the allegation that the corporation have not granted the right to the defendants, he admitted the vote of eight to five in the board of aldermen, and the right of the court to look into the proceedings, in reference to their validity; but contended, that the restriction on which the plaintiffs' point here is founded, does not apply to the mere assent of the corporation to use a public street; for a mere assent to what otherwise would be an invasion of corporate rights, is not *law ;* and that the provision of the charter, as to this, does not take effect till 1st of January, in the year 1850. [*Court.* What is the difference between a law and an ordinance?] A law is a general rule; ordinances are mere regulations as to their officers or property, not in general force. A resolution may apply to any thing, not general to *all* the community. The word ordinances has been applied to acts of the corporation, as *statutes* to acts of the legislature. The word resolution covers what may not be laws or ordinances. That which operates on a particular individual, is not a *law.* [Edmonds, J. referred to the sixth section of the charter, which mentions that a resolution, unless returned, shall become a law.] Mr. O'Conor admitted the verbiage, and the embar-

Drake *v.* The Hudson River Railroad Co.

rassment in construing the law, which he declared to be absurd and nonsensical.    Mr. O'Conor further stated that the confusion of the statute must excuse him for asking the court to give it effect, according to its rational spirit and meaning. He contended that for all purposes of administration, it was to go into effect on the 1st day of January, 1850; and for certain special necessary purposes, it went into effect on the 1st of January last.    He admitted that this position could not be maintained by its literal expression; it was necessary that, for certain purposes, it should take effect before January, 1850.    The 27th section repeals all provisions of law and charter inconsistent with the act; all not inconsistent are to remain in force.    From this, a speck may be got to redeem the act and construe it rationally. The part of the old charter and laws, as to administration, may endure till January, 1850, and be consistent with the act and its spirit; they may remain till they come in conflict; the very letter would repeal it instantly.    He contended that the third section showed that the common council, of which the act speaks, is not the present common council; and covers the whole ground, as to the time when and the manner in which the act shall take effect.    They are not to enter on their duties till January, 1850, not before they are born.    The defendants have a right to ask a natural construction of these incongruities; and, if necessary, to rule down an expression.    The re-organization refers only to the time when the new aldermen shall come in; it was the aldermen of one year, not those of two years, who failed to give a majority.    This provision does not apply to the present common council; and, if it does, the assent is not a *law* or ordinance.

4. As to the pre-payment of compensation for supposed or *consequential* damage, Mr. O'Conor contended, that there was nothing in the incorporation requiring or warranting this.    The power given is to *take* the land, not *injure* it; it gives the right to take, enjoins the duty to pay for it; to do so *simultaneously*; requires that when their *operations injure* the land, they must compensate for the injury.    The legal principle is, that no more land be taken than is necessary.    The injury or damage must

Drake *v.* The Hudson River Railroad Co.

be *physical.* For land *physically* affected, appraisers may be appointed; for instance, in the case of digging through a hill, or taking down or damaging a house; these are physical, not consequential injuries. The injury meant, is injury by the *operation* of the work, not injury to a man's business; not consequential, as meant by the counsel for the plaintiffs. The owners may be injured, and the property not injured; that injury to property is meant, otherwise an *absolute* absurdity is involved.

5. It is not a *condition precedent,* but a privilege to the company, to *include the injury* in the appraisement; for consequential injury, they would be liable; may run the risk as others would; they would be trespassers, and where immediate physical injury would result, might be restrained. Possibly this might be the case here. (*See the defendants' act of incorporation, and the case of Bloodgood* v. *The Mohawk & Hud. R. R. Co.* 18 *Wend.* 9.) The resolution in that case was adopted as a principle of law; the judgment of the court, that pre-payment is necessary, was reversed. The resolution is authority; for if the legislature had not the power to authorize the laying the road in the streets, the decision of the point of pre-appraisement, &c. was unnecessary; the principle of the resolution is involved in the decision.

6. As to the objection that it is a nuisance, or a purpresture, see 8 *Dana,* 299, for a definition of the latter, and the affidavit of Mr. Coddington, to prove the contrary. H rails do not constitute a purpresture. The railroad is a great public benefit. The greater portion of the community are accommodated thereby; and the fact that a small number of people are inconvenienced does not constitute the road a nuisance. Those who ride in their own carriages, or whose business is injuriously affected by the laying of the rails in the streets are a minority. Railroads are a part of the history of the times; we have by it a connection with the great west, by the Harlem railroad; it now runs to the very vestibule of justice, (the City Hall;) it is the present common law; Chancellor Kent has observed that it was the comfort of his old age. Lamp posts and cobble stones are

ancient, but it can not therefore be said that they are useful, nor that improvements are not therefore to be admitted. Improvements for accommodation must be admitted; unless on the whole detrimental to the community. Though shocking accidents by railroad will occur, yet by comparison they will be found less attended by these than other ways are. The common law adapts itself to the age; if a railroad cause injury, eht remedy by action on the case is sufficient; that railroads in themselves are not pernicious, see 8 *Dana*, 299, and 9 *Paige*, 171.

7. To a *moderate extent*, diminishing the accommodation of the public, for the better accommodation of a larger portion of the public, does not involve the invasion of private right or public right. (6 *B. & C.* 566.) There must be some authority and principle governing the use of highways by every species of carriage, which the legislature may authorize, and may be susceptible of introduction on the highways. It may be improper to admit steam in the streets, but that question is not before the court. The carriage is a car somewhat longer than an omnibus; each car has its distinct pair of horses; it is propelled by horse power as other omnibuses, and when a foot passenger or carriage is desirous of passing, it is exactly known where it comes and travels. Not so with omnibuses; they sweep the whole street, liable to be on you at any place, and so as to any other carriage. True, railroads have a track which may not at some times be as easy to pass over as other parts of the streets, but no serious difficulty is proved. The court is capable of looking into the matter themselves.

8. Corruption in the defendants' witnesses has been imputed, but of this there is no evidence. The affidavits say the railroad will be a depreciation to property; but the defendants' affidavits prove the contrary. Mr. West, one of the plaintiffs, thinks it will be an injury; his landlord thinks otherwise, and correctly, for at the end of the lease of Mr. West the property will advance, and Mr. West can not then get the property at as low a rent as now. In this conflicting state of facts, the court can not say the road is a nuisance. (4 *Mylne & Craig*, 249.) The

court of chancery will not interfere with the opinion of public functionaries, unless it interferes with private rights. (6 *Paige,* 134.) The opinions of persons not experts, are not entitled to weight. The opinion of the common council is, that the opinions of persons who were not experts were against the defendants, but the opinions of experts were in their favor.

9. This is not a proper case for a preliminary injunction; the right to interfere is on dubious equity; if wrong, the defendants are liable to indictment and suit. (2 *Story's Eq. Jur.* 922 *to* 934, *n.* 1; 254 *of 4th ed.* 6 *Paige,* 563. 7 *John. Ch. Rep.* 335. 4 *Paige,* 248. 4 *John. Ch. Rep.* 55. 9 *Paige,* 23. 1 *Barb. Ch. Pr.* 37, 608. 4 *Paige,* 248.) The prayer of the bill is for an injunction, not for a preliminary injunction; if it should be that private rights are invaded, that fact must be established by proofs, at the trial; if so found, the damage can be compensated fully, by ordinary proceedings at law; if otherwise, it would be impossible to compensate the company if the injunction be issued. If the running is unlawful, all persons are liable, criminally and civilly; all who are connected, all the officers and agents; and this gains force, because it is not the railroad company and the plaintiffs who sue in the contest, but the company and all the concurring adjacent proprietors and the plaintiffs and the non-concurring proprietors, and the latter portion alone can suffer by the company.

*D. Lord,* for the defendants. 1. The time when this application for injunction was made, being over a month after the sanction by the corporation of the city was given, (it was on Sept. 25th, and the complaint was sworn to on Oct. 31st,) it was too late. If the plaintiffs forbore till the rails were laid, and till the time when an injunction would be severely injurious, it was their own fault. And although for final relief, the complaint might be well founded, yet, on this ground, it would not justify a motion for a temporary injunction. (*Hodgkinson* v. *The L. I. Railroad Co. not reported.*)

2. No authority exists for granting a preliminary injunction;

Drake *v.* The Hudson River Railroad Co.

the injunction sought for is not against running the cars, but against the road.

3. The object of the road is the public good, not private advantage or for the adjoining inhabitants; it is to increase travel —it is for the whole public; not of the city only—but the whole public. It may be inconvenient for carriages, but is calculated to promote trade and commerce. The question is not to be determined by majorities. As to nuisance this is a mixed question of law and fact; and not for opinion. The fact must be stated. All concede that this rail can be passed; it is a track in the middle of the street; carriages can only be damaged by rapid passing, not by moderate passing, as the law requires.

4. The railroad is not a nuisance; it can be laid without being such, in the streets. They have been laid in almost every street and village in the Union—Boston, Philadelphia, Baltimore, Washington: the idea of compensation was never urged. If so decided, the decision would disturb more property, and do more to retard the advancement of the country than any other single judgment could occasion. After the act of incorporation this road can not be called a nuisance; the mode of constructing it is not pretended to be such; and public acts can not be ridden over because private property is taken.

5. The illegality of the consent or non-consent of the corporation, does not entitle the plaintiffs to the injunction, because such illegality or non-consent does not make the road a nuisance; the corporation exceeding their power, does not thereby make a nuisance; nor confer power to obtain an injunction.

6. The assent of the corporation is not an act of legislation; it is a mere right of veto or assent. This is not legislation; it is only to legalize, as in the case of a will, &c. requiring assent to a marriage.

*F. B. Cutting*, in reply. 1st. Would the company, without the authority of the corporation, have had the right to lay their railroad in the streets? 2d. If they, without such authority, had not such right or capacity, have the corporation so legislated as to have conferred such right or capacity upon them; and 3d. If

Drake *v.* The Hudson River Railroad Co.

they have not so legislated, have the plaintiffs the right to apply to stay them in breaking up the streets ? The object of the act of the legislature was only to receive the *concurrence* of the city corporation : for without such concurrence, the act, as to the city, is void—is void for want of providing for pre-payment of compensation to those injuriously affected or damaged. The legislature has not the right so to convert the streets, without the consent of the corporation, unless pre-payment be first made ; and, if without such permission the company lay the rails, the owners have a right to enjoin them. (6 *John. Ch.* 429.)

As to the second question—after referring to § 4 of the charter of the company, and to § 5 of the law of 1848, he contended that the assent or consent (both words are used in the statutes,) requires *legislative action*—not *executive*, or judicial action. It is equivalent to the grant of an incorporeal hereditament to the defendants, to carry out the purposes of the charter ; this power resides in the two boards under one or the other of the city charters ; consent can only be given by authority of both ; which consent of both constitutes the act of legislation ; and when completed by the concurrence of the mayor, it becomes a law—is binding ; it is equivalent to the word authority ; primitively, the word *assent* means *to concede ;* and to *concede* is to grant. As to the 4th section of the city charter of 1849, a difference is alledged between the word *law,* the word *ordinance,* and the word *resolution.* The defendants contend that an ordinance, or resolution may be passed by a mere majority of the members *present* of the respective boards of the common council ; that it is then valid, though not passed by a majority of *all the members* elected ! By referring to the old charter, and the various sections in this charter, the latter is capable of a reasonable construction. (He here read § 10 of the old, and § 6 of the new charter ; the latter, to show that the word *law,* as employed therein, was meant to include ordinances and resolutions as well as general laws. The section provides, that unless the mayor shall return a *resolution* within a specified time, approved or disapproved, it shall become a *law.*) He further contended, that the spirit and intent of the clause requiring a ma-

Drake *v.* The Hudson River Railroad Co.

jority of all the members elected, to pass laws, ordinances and resolutions, and requiring the mayor to have the privilege of approving or disapproving, was to prevent hasty legislation; that, if improper, the mayor might return it, *with his reasons* for disapprobation; that they might, with those reasons before them, *re-consider* the subject, before finally deciding upon it; and that, as to this act of assent, the charter of 1849 was in operation when the resolution in question was passed; and, in support of this he analyzed and examined the several sections of the act; read the 27th section, repealing, in express terms, the 7th section of the charter of 1830, and the sections repealing all provisions of law and charter inconsistent with the act of 1849, and the section declaring that the law of 1849 should go into effect on the 1st of June of that year, and contended, therefore, that the 4th section, requiring the vote of *all the members elected* to pass resolutions, (or laws, as contended by the defendants) went into effect on the last mentioned day; that the provision in the 6th section referring to the 12th and 13th sections of the old charter, meant, the *mode* of sending it to the mayor, and by inserting the words " and sent to the mayor," which is the fair implication of the provision, the intent is truly expressed, and the true construction given. Unless that construction be adopted, there is no provision for sending the ordinance to the mayor; or two modes of legislation exist, one with the privilege of *veto* to the mayor, and one not. But with the construction above mentioned, the act is reconcilable, and is similar to the provisions of the state constitution. It leaves the resource of a reconsideration, with the reasons for objection. To take away the mayor's power of veto, would be a fundamental change, never contemplated by the framers or passers of the act; a decision that such is the effect of it, would, indeed, astonish the whole community. Every purpose of public policy requires, that the section requiring a majority of all the members elected, (the 4th section) should take effect on the day last mentioned; and there is no conflict or incongruity in giving it immediate effect.

If the company work any part of the street, supposing the law and the assent of the corporation of the city legal, it can only

Vol. VII.                    66

Drake *v.* The Hudson River Railroad Co.

be on pre-payment of the compensation for the injury, consequential or immediate ; and unless pre-payment be made, the owners are en*titled to the* injunction.   Under the cessions from the church, the owners are *cestui que* trusts, who have paid full value ; having a special interest, a special right, having paid more than the public at large.   As to so much of the street as was opened by law, the expense was compulsorily paid by the owners ; because, as was alledged, they derived a special benefit, not paid for by the public at large ; they had, therefore, a special right to complain.   Assuming that the plaintiffs' lands were injured, or injuriously affected, the owners are entitled to compensation ; and if so, they are entitled to pre-payment.  Waiving, for the present, *the common law* principle, *that he who so uses* his property as to do damage to his neighbor, must answer for it, the argument of the defendant is, that no compensation can be given unless there is a physical damage, as a bank caving in, or a house destroyed by the operation of constructing the road. In the acts of incorporation, four cases of injury are mentioned ; lands taken ; damages to lands adjoining ; to houses thereon ; property affected by any operation connected therewith.   Lands injuriously affected are included ; the injury must be compensated for, and by pre-payment.   For instance, in the case of a railway between the wharf and the land ; the wharf is affected ; there is no difficulty in describing the damage ; the acts provide for it ; the jury are to take a view, that by ocular demonstration, *remote* claims of consequential injury be not interposed ; if the claim is imaginary the jury will so find it,   (*See the Massachusetts Railway Act, Rev. Stat. Mass.* 344 ; 3 *Metc.* 380 ; 5 *Id.* 368 ; 1 *Gale & Davison,* 589 ; 6 *Ad. & Ellis,* 365 ; 25 *Wend.* 462 ; 2 *John. Ch.* 162 ; 1 *Adol. & Ellis,* 168, 776.)   Pre-payment of compensation was indispensable.   It has been said by the opposing counsel that the case in 18th Wendell has settled the right of the public to take private property ; and that the common law is founded on a system which constitutes its glory ; that it is expansive, and adapted to the improvement of the age. The right of the public to take private property, by paying just compensation for it, and by pre-payment and the declaration

Drake *v.* The Hudson River Railroad Co.

above mentioned, as to the common law, Mr. Cutting agreed to; but he protested against the doctrine of taking the property of one to give it to another; when the common law shall expand so far, it will become necessary to shrink it. In the days of Ld. Coke, to do so would have been indictable; if it is necessary to take or injuriously affect private property, just compensation must first be made; and the act of taking it even for public use, should be jealously watched. In England, the example of the judiciary was worthy of all admiration and imitation, in standing by the rights of property, though connected with an arbitrary government which was burdened with a mighty debt. The colossal power of England is maintained, in consequence of the upright, fearless and firm manner of the judges, in administering the law; though mighty influences surround them, they have uniformly required that compensation by pre-payment be made for private property taken for public use. As to the objection that the complaint does not pray for a preliminary injunction; it is in fact for such an injunction, and that it may be made perpetual: the prayer is for both kinds. The assertion that the injunction should not issue, because the defendants may be indicted for a nuisance, is not tenable; for indictment is an act of public justice, the prosecution here is for private rights—and for this he referred to the authorities cited by Mr. Sandford. It is said that, now that the rails are down, the injury to the defendants (if the injunction issues) will be irreparable. This cannot be, for they then can go to Canal-street—at which street the New Haven Railroad stops; and if it were so, it is their own fault; the rails were put down after full notice as to plaintiffs' rights, and (except as to Canal-street) after the complaint was prepared and served; they were put down with railroad speed—large bodies of men were employed night and day; if they had no right before, they have no right since the rails were down to use the street; and again, it is doubtful if the complaint could be maintained if made before the nuisance was commenced; the motion should be granted on its broad merits. The decision should be made on the broad principles of justice; the case is entitled to the gravest and most careful con-

sideration; it involves great fundamental principles, which should be boldly, fearlessly, and correctly met, not left as open questions, nor evaded, and not decided by the subordinate and immaterial consideration, as to whether the rails are down, or were put down before or after the complaint was made, or before or after notice of the plaintiffs' rights.

There cannot be a doubt that there is a practical encumbrance in the streets, an embarrassment created, which if unauthorized should be removed. Is there a doubt that it is a nuisance? Even if the company had the right to lay their rails, they should so have laid them as to occasion the least possible injury.

JONES, P. J.    The acts of the legislature referred to by the plaintiffs in their complaint, authorized and empowered the stockholders of the Hudson River Railroad Company to construct a single, double, or treble railroad, or way, between the cities of New-York and Albany, commencing in the city of New-York, with the consent of the corporation of that city, and passing through the counties therein mentioned, and ending at some point on the Hudson river, in the county of Rensselaer, opposite the city of Albany, to be laid with an iron rail of the weight therein mentioned, and to transport, take, or carry any property and persons upon the same, by the power and force of steam, of animals, or of any mechanical or other power, or of any combination of them, for the term of fifty years from the passage of the act of incorporation.    The 4th section of the act authorized them, after one half of the capital stock should have been subscribed, and five per cent thereof paid in, to exercise the powers and privileges conferred upon them by the act; and that thereupon the directors might appoint an engineer or engineers, and cause to be made such examinations, surveys and maps for the said railroad as might be necessary to the selection by them, of the most eligible line or lines for the location of the road, but requiring that the same be located within the limits, and in the manner therein prescribed; and providing that the directors, after such examinations and surveys were made, should select, and by certificates drawn on suitable maps, under their hands

Drake *v.* The Hudson River Railroad Co.

and seals, designate the line, course, or way they might deem most advantageous for the said railroad, which certificates should be filed in the offices for that purpose, described in the said act; and that the line, course or way so selected and certified, should be the line, course or way on which the said corporation should construct or make the said railroad. The same section of the act provides and directs that the said directors may locate their said railroad on any of the streets or avenues of the city of New-York, westerly of and including the Eighth avenue, and on or westerly of Hudson-street, provided the assent of the corporation of said city be first obtained for such location, and said railroad company should not infringe upon the rights or privileges of the Harlem Railroad Company theretofore incorporated.

By the 7th section of the act, the said railroad company or corporation was empowered to purchase, receive, and hold in fee simple such real estate and other property as might be necessary in accomplishing the objects of the incorporation; and also to receive, take and hold such voluntary grants and donations of real estate and other property as might be given them to aid in the construction, maintenance and accommodation of said railroad, but which real estate should be held and used for those purposes only.

By the 10th section of the act, the corporation was empowered by their engineer or agent to enter upon any lands or water for the purpose of making surveys, and by their engineers or agents to enter upon, take possession of, and use all such lands and real estate as might be necessary for the construction and maintenance of the said railroad, and the accommodations required appertaining thereto, but that all real estate thus entered upon not voluntarily granted or given should be purchased by the corporation of the owners at the price to be mutually agreed upon between them. And in case an agreement could not be made between said corporation and the owners of any property which might be required for said purposes, or which might be affected by any operation connected therewith, the compensation to be made therefor should be ascertained, assessed and paid in the manner prescribed by the act.

Drake *v.* The Hudson River Railroad Co.

By the act of February 10th, 1838, further to amend the original act, compensation is to be made for the lands, real estate, and property thus taken possession of and used for these purposes, and not voluntarily given to or purchased by them, in the manner following : The corporation may present a petition to the proper court, setting forth the same, and praying for the appointment of commissioners to ascertain the compensation to be made therefor ; and the court, on such application and due notice of presenting the same, are to appoint five competent and disinterested persons commissioners to ascertain such compensation, who after hearing the parties and viewing the premises, shall ascertain and certify the compensation proper to be made to the owners and parties interested, for the land, real estate, and property so to be taken or injuriously affected, as aforesaid, without any deduction or allowance on account of any real or supposed benefit or advantage which such owners and parties interested may derive from the constructien of said road. The commissioners are to make, subscribe, and file in the office indicated by the act, a certificate of their said ascertainment and assessment, containing a description of the premises for which such compensation is to be made ; and the court, upon such certificate and proof that such compensation in the sums certified has been paid to the parties entitled thereto, or deposited in bank as authorized by the act, shall make and cause to be entered in its minutes a rule describing the lands, &c. such ascertainment of compensation, with the mode of making it, and such payment or deposit of the compensation as aforesaid, a certified copy of which is to be recorded in the offices indicated by the act, in the like manner and with the like effect as if it were a deed of conveyance from the said owners and parties interested, to the said corporation ; and upon the entry of such rule the said corporation shall become seised in fee of the lands, real estate and property described in it, or required to be taken as aforesaid during the continuance of the corporation, and may take possession of, hold and use the same for the purposes of said road, and thereupon shall be discharged from all claims for damages by reason of any matter specified in the said petition, certificate or rule of court.

Under these powers, privileges and provisions, the stockholders proceeded to organize their corporation, and to locate the line of their road, and in some sections of it acquired the lands and real estate required for the construction of the road and their track thereon.   In the month of May, 1847, availing themselves of the power and provision in the act in that behalf contained, the company, with the assent of the corporation of the city, located their said railroad on the Eleventh avenue of the city of New-York to Thirty-second-street, and thence through other streets and avenues to and through West-street to Canal-street; and afterwards, on the 14th May, 1849, applied to the common council for the assent of the corporation of the city to lay a double track railroad, and run their trains of cars from the Tenth avenue through Fourteenth-street and Hudson-street to Chambers-street.   The board of aldermen, on the 1st day of August, 1849, by a vote of eight members in the affirmative, against five members in the negative, passed a resolution to the effect that the defendants, the Hudson River Railroad Company, be authorized to lay down a double track of rails, with suitable curves and turn-outs, from the northerly line of Canal-street, at West-street, through Canal and Hudson streets to Chambers-street, under the direction of the street commissioner, and subject to all the restrictions, obligations and provisions of the ordinance authorizing said company to lay down rails to Canal-street. The president of the board objected to the resolution as not being in conformity to the provisions of the new or amended city charter, and that it could not be sent to the board of assistant aldermen as having passed the board of aldermen.   From his decision an appeal was taken, and by a like vote of eight members to five the appeal was sustained, and the resolution declared to be adopted.   It was then sent to the board of assistant aldermen for concurrence.   The board of assistant aldermen concurred in the resolution by a vote of thirteen members in the affirmative to four in the negative, and it was afterwards approved by the mayor of the city.   The company, by their agents, pursuant to the assent given them by the said resolution, commenced to lay down the double track of their said railroad, under the

Drake *v.* The Hudson River Railroad Co.

direction of the street commissioner, in and along Canal-street, between West and Hudson-streets, and were preparing to continue the same to and through Hudson to Chambers-street, when the plaintiffs took their incipient measures to arrest the work as unauthorized by law, and injurious to them; complaining of it, moreover, as a nuisance, and averring that real estate and property vested by law in them had been taken for the location and construction thereof, without making compensation to them therefor. The double track of rails occupy about 16 feet of the middle or center of Canal and Hudson-streets, and in some parts of Hudson-street, between Duane and Chambers streets, approach to within about seven feet, and at one place it is said to about four and a half feet from the side walk. A number of affidavits have been read by the plaintiffs for the purpose of showing that the double track of rails obstructs and impedes the crossing, and the free and full use of the streets; that it injuriously affects their property in various ways, and that it is a nuisance to them, seriously impairing the value of lots fronting thereon, and endangering the safety of life. These charges and complaints are repelled by affidavits on the part of the defendants, which represent the railroad as a desirable improvement, of great public utility, creating no injurious obstructions to the use of the streets for ordinary purposes, causing no danger to those using the same, and free from the objection of injury or inconvenience to the owners and occupants of tenements and lots fronting the streets through which it passes. It is affirmed, and not denied, that the location of the track from West through Canal and Hudson to Chambers-street, and the laying down of the rails therein, was commenced by the agents of the company before the plaintiffs' complaint was served upon them; but it is conceded that the same was done, with notice of the objections of the plaintiffs thereto, and that the operation of laying down the rails was continued after service of the plaintiffs' complaint upon them. This court is asked for an order or injunction restraining the said defendants from laying down a double track of rails, or any track of rails, single or double, of any kind whatever, from West-street through Canal and Hudson to Chambers-street,

or any where within the said limits; and the further prayer of the plaintiffs is, that the said order or injunction be perpetual, and that the said defendants may be ordered to remove and take away so much of the said tracks of rails as they have laid, or caused to be laid down in Canal-street, or any part of Hudson-street, on said route from West to Chambers-street.

The first ground of complaint is, that the defendants occupy grounds for the track of their railroad laid down by them in said streets, which belong to the plaintiffs either in fee or for the un-expired residue of terms of years, which have been taken and used without compensation to them, the plaintiffs, therefor, or for their right and interest therein. The answer to the objection is, 1st. That no lands, real estate, or property within the limits of those streets, have been taken for the said railroad, but that the parts of said streets occupied by the tracks of said rail-road, are so occupied and used, by and with the consent of the municipal government of the city, to which the regulation of the public streets of the city belongs, and for the purposes of travel and the accommodation of the public, to and for which the lands forming the street were dedicated by the original owners to the public, or purchasers, or acquired under and by virtue of the laws of the state, for public purposes. And 2d. The claim of the plaintiffs to the soil and grounds within the streets, and forming the same, or to a legal estate either in fee or for any residue of any terms of years therefor, is contested by the defendants, who aver and insist that the same was and is vested, wholly and exclusively, in the corporation of the city, subject to the public use thereof as streets, and under whom they, the defendants, claim to occupy and use the same for the said railroad. The plaintiffs have shown no title in themselves, or in any or either of them, to the legal estate, either in fee or for any lesser estate or term of years, in any part of the lands or soil within the limits of Hudson or Canal-street, and it is ad-mitted that no grant or lease exists, or ever did exist, to them, in express terms therefor; but they represent that they respect-ively are purchasers of the fee, or lessees or assignees of leases for terms of years, of and for lots fronting to the said streets,

and bounded thereon, and derive such their titles to the said lots from the corporation of the rector and inhabitants of the city of New-York, in communion of the Protestant Episcopal Church in the state of New-York, who were the owners and proprietors in fee simple thereof; and they insist and claim, that the grants in fee or leases of the said lots, being bounded on the said streets, by operation of law, extended to the middle or center of the street, and passed to and vested in the grantees or lessees the legal estate and interest in the parts of the streets in front of the said lots, and extending the width of the lots to the center of the street, subject to the dedication of the same to public uses, as, and for a street. It is stated, and not denied, that the corporation of the rector and inhabitants of the city of New-York, in communion of the Protestant Episcopal Church in the state of New-York, prior to the year 1797, were in the possession, and claimed to be of right the sole and exclusive owners in fee simple of a large tract of land in the city of New-York, extending from Chambers-street to and beyond Canal-street, within which Hudson-street from Chambers to Canal-street was included, and which had been laid out into streets and lots as mentioned in the complaint, that the said tract of land was from time to time, as the compact part of the city extended, at different times laid out by the said rector, &c. the said owners thereof, into lots and streets, for city purposes, and that Hudson-street from Duane-street, then called Barley-street, to Canal-street, was one of the streets so laid out and designated for a public street; and that the lots of land so laid out, and which fronted on said Hudson-street, or some of them, were sold and conveyed by the said corporation of the rector, &c. to purchasers in fee, or leased to lessees for terms of years, and that the same were in and by the deeds or leases thereof, fronted to and bounded on the said street.

It is not denied that the grantees and lessees acquired by their grants and leases a right of way in and over the street on which their lots were bounded, commensurate in its duration with the estate in the premises granted or leased to them thereby. Those streets gave them their access to those lots, and

were necessary for their use and accommodation, in the enjoyment of their said lots, and the appropriation and application of the same to the purposes of residence, and business operations. Whether the legal estate in the soil of the street, in case the same resided in the grantors at the time of the sale and conveyance or lease thereof, would by operation of law pass to and vest in the purchaser in fee, or the lessee for the term granted by the lease, or not, is a question, which in any view of the case, does not arise, and is not necessary to be examined in the present case, and I express no opinion upon it.  The complaint states that the land laid out for Hudson-street, from Barley-street to the pasture farm at Moore-street, on the north side of the intended square called Hudson Square, and being in width 90 feet, designated on a map of the same by the corporation of the rector, &c. as and for a street, was by an instrument in writing under the corporate seal of the said corporation, and bearing date the 20th June, 1797, granted and conveyed by the said corporation of the rector, &c. for the consideration expressed therein of five dollars, to the mayor, aldermen, and commonalty of the city of New-York, to the intent, nevertheless, and in trust that the said streets be kept open for the use of the citizens of the city of New-York forever.  And that the said corporation of the rector, &c. by another instrument in writing, duly executed under their corporate seal, and bearing date the first day of December, in the year 1813, after reciting that by recent regulations relative to public streets, divers pieces of land belonging to them between North Moore, and Christopher streets, were intended to be used as public streets, and that they had agreed to grant and cede the same for that purpose, in consideration of receiving to their own benefit a certain other piece of land theretofore used as a highway, and no longer intended to be so used, did, in consideration of the said agreement, and of the sum of one dollar therein expressed, grant, bargain, sell, and convey unto the mayor, aldermen, and commonalty of the city of New-York, among other pieces or parcels of land, the piece therein described as Hudson-street, with the breadth of ninety feet from Christopher-street, to the line of the lands of Anthony

Lispenard, and from Watts-street with the same breadth to Vestry-street, and then with a breadth of 86 feet 6 inches to North Moore-street, to have and to hold the same, unto the said mayor, &c. and their successors, for ever, for public uses, in like manner as the other streets of the said city are used. These deeds are before us, and clearly purport to convey to and vest in the corporation of the city of New-York, the lands composing the parts of Hudson-street therein respectively mentioned, for public use, as streets of the city. It is admitted that the portion of said Hudson-street extending from Duane-street, formerly Barclay-street, to Chambers-street, and the portion of said Hudson-street extending from Laight-street across Canal-street to Spring-street, were opened by the mayor, aldermen, and commonalty of the city of New-York, under and by virtue of the powers and authority conferred upon them by the act of the legislature of the state of New-York in that respect, in the complaint mentioned, and that the value of the lands taken to form those portions of said Hudson-street, were assessed upon and paid by the owners of lots and property deemed to be benefited thereby, as in the said complaint mentioned, and not by the corporation of the city. The portion of Canal-street, between Hudson and West streets, is understood to have been also opened by the corporation of the city, under and by virtue of the powers and authority conferred upon them by law, and the value of the lands taken for the purpose of forming the same assessed upon and paid by the owners and parties interested in the lots and parcels of land deemed to be benefited thereby, in proportion to the benefit and advantage thereof to them respectively, and no part of the same to have been paid by the corporation of the city. But it is expressly enacted and provided by the acts of the legislature, authorizing the corporation to cause public streets to be laid out and opened, and the lands of individuals to be taken for the purpose, and the value of the lands so taken to be assessed upon the persons benefited by the improvement, that on the final confirmation of the report of the commissioners of estimate and assessment in the premises, the mayor, aldermen, and commonalty of the city of New-York,

shall become and be seised in fee of all the lands, tenements, hereditaments and premises in said report mentioned, that shall or may be so required for the purpose of laying out and opening the said street so laid out and opened, or for the purpose of extending, enlarging, or otherwise improving the street so to be extended, enlarged, or improved, and that the said mayor, &c. may thereupon, or at any time thereafter, take possession of the same, in trust, nevertheless, that the same be appropriated and kept open for, or as part of a public street for ever, in like manner as the other public streets in the said city are, and of right ought to be. The plaintiffs can consequently have or claim no right or title to the legal estate of the portions of Hudson and Canal streets taken by the corporation of the city, by authority of law, for the purpose of laying out and forming or opening the same. They have, I think, shown no sufficient title or right in themselves, to those parts of Hudson-street laid out by the corporation of the rector, and inhabitants of the city of New-York, in communion of the Protestant Episcopal Church in the state of New-York, and dedicated by them to public uses as a street. That corporation, by the deeds mentioned in the complaint, conveyed the lands forming those portions of that street to the mayor, aldermen, and commonalty of the city of New-York, and vested the same in them and their successors for ever, in trust, for public uses as a street. Two of the plaintiffs, Rohr and Stewart, state their tenements and lots to front on Canal-street, the former as being held in fee, the latter for the residue of thirteen years of an unexpired term. Neither of them can have any pretence of claim to the legal estate and title to the lands taken to lay out, form, and open Canal-street. The other three plaintiffs, Susannah Drake, Andrew Bowden, and William West, state their premises to be on Hudson-street; of these, Susannah Drake represents her tenements to consist of a lot with a three story dwelling house thereon, in fee simple, on the west side of Hudson-street, now known as No. 141 Hudson-street, the sources or origin of her title are not disclosed in the complaint, but it is stated, and not denied, that she acquired her right to the fee in the year 1821, which was long subsequent

Drake *v.* The Hudson River Railroad Co.

to the conveyance of the street to the corporation of the city. She represents, however, that those under whom she claims, and from whom she derives her title, had a previous lease for the term of 99 years, given in 1804, long before the deed to the city corporation. That lease is stated to have been given to the lessees therein named, and to have come by divers mesne assignments to the said Susannah Drake and two other persons. The co-assignees are not before the court; they are not parties to the suit, and do not complain of the railroad. They probably have now no interest therein, and she has become and is the sole owner of the whole. She claims to be the owner thereof, and in the complaint alledges herself to be seised thereof in fee; and as respects her, she by accepting a conveyance in fee of the lot, has suspended the lease and extinguished all the right and interest under it. Whatever may have been her right to the legal title to the lands within the limits of the streets, under or by virtue of the lease held by her as assignee, as to which we purposely avoid all inquiry, those rights were commensurate only with the leasehold interest. The fee of the land subject to the lease, if it attached thereto, was in the corporation of the rector, &c. and was conveyed by them to the mayor, &c. of the city. When she accepted the deed and took the fee, the lease was necessarily merged or discharged, and the leasehold interest, as to the lot conveyed to her, merged in the fee and extinguished. She took the lot in fee, but could not take the fee of the land comprised within the limits of the street, for that had been already conveyed to and vested in the mayor, aldermen, and commonalty of the city of New-York; the extinguishment of the term left the fee freed, and discharged, from it and the lease, for the benefit of her, the said Susannah Drake, the grantee of the lessee, as to the lot; and for the benefit of the city corporation, the grantees of the fee of the land within the street, as to the land within said streets. The clause in the deed of conveyance to her, the said Susannah Drake, importing that it was subject to all subsisting rights under the lease, can not vary the case : it could only refer to the other co-owners of the leasehold interest, and to rights compatible with the estate in fee.

Again; in whomsoever the title to the land within the street may have been vested and had resided, all parties agree that the land itself had been dedicated by the corporation of the rector, &c. the former owners thereof, to the public as a street, for public uses as such. Whether that dedication was by the deed to the mayor, aldermen and commonalty of the city of New-York, vesting the title in them in trust for those public purposes, or by the act and operation of laying out their said lands comprising the streets into city lots, and designating the streets on the map thereof, and by the sale and lease of lots fronting thereon to purchasers and lessees, thereby rendering the dedication thereof irrevocable, the right of the public to the use thereof as a public street, would be equally clear, vested and irrevocable, and however the fee might vest, the present right as well of the public at large as of the owners of property fronting on and bounded by the street, whether the legal title continued in the original proprietors or passed to the purchasers of the lots, or vested in the corporation, would be to the free use and benefit of the street, for the purposes of a public street of the city; and the same could be diverted therefrom or appropriated to any other use or purpose by neither. The city corporation, on the assumption of the title being clearly vested in them, would be equally unauthorized and without the legal capacity to discontinue or close the same as a street, unless under the special powers, and in the cases and on the terms prescribed by law, and any enclosure thereof, or obstruction amounting to an exclusion therefrom, of those entitled to the use thereof, or so impeding them therein as to injuriously affect their pursuits or interests in reference thereto, would be a nuisance, abatable or punishable as a nuisance, by or at the instance of those who might be specially endangered or aggrieved thereby. That these plaintiffs have rights in these streets, and an interest in the maintenance of them in their integrity, is undeniable; it is equally clear that the right and interest they have in them consists in the use, benefit and enjoyment of them as public streets or highways, for the legitimate uses and purposes of streets of the city. They have no private or exclusive right to, or prop-

Drake *v.* The Hudson River Railroad Co.

erty in, the use or enjoyment of them. The legal title to the land, subject to the public use if they possessed it, would give them no right to divert it to private uses, or to preclude the public or individuals from, or obstruct or embarrass them in, the use thereof for legitimate purposes, in any mode or manner, though new or of recent invention or introduction, if allowed by law and consistent with the object and purpose of such dedication. The corporation of the city, acting by the common council, have, by the provisions of the charter of the city, never abrogated and yet in force, and other laws applicable thereto, the management and regulation of the public streets, and of the use of them for the trusts and purposes of the dedication or establishment of them, and always have been, and now are, in the constant habit of exercising those powers over them, and in reference to them. They prescribe the width of the side walks and of the carriage way, license the partial and temporary use of parts of them for necessary private purposes; permit or prohibit special uses for particular objects, and direct the mode and manner of pitching and paving them, and the laying and leading of sewers and pipes in and through the same, under the surface thereof, for various purposes of public or private use, and constructing and building vaults under the same for public use, and granting to others the right and privilege of building or constructing vaults under the surface thereof, for private uses, for and upon adequate consideration paid to, and received by, them therefor. It may not be out of place here to observe, that it would seem to be necessary, or highly expedient, that for those purposes the legal title to the land or soil should reside in the city corporation, and that it has hitherto been the received opinion that the same was vested in them. Under the colonial government, and during its continuance, the lands occupied by the streets previously laid out, were understood and supposed to be vested in the crown, subject to the use of them as streets; and the state succeeding the crown, in the ownership thereof, the same, and the right, title and interest of the people therein, were, by an act of the legislature passed many years ago, vested in the corporation of the city. The act of 1813, pursuing the

same policy, provided and declared that the lands taken for the opening of the streets, avenues and squares, laid out by the commissioners for laying out the city into streets and avenues, and all the lands required and taken for forming and opening streets, avenues, squares and places in the parts of the city not laid out by the said commissioners into streets, avenues and squares, should, when taken for any of the said purposes, be vested in the said mayor, aldermen and commonalty of the said city, who should become seised of the same in fee, in trust for the uses and purposes of public streets, avenues and squares, and that the persons benefited thereby, to whom the sums paid therefor, should be assessed and be by them paid, should have no other right, title or interest therein, than the right to use the same as streets and avenues in common with their fellow citizens and the public at large, and the special accommodation and convenience which they acquired from their contiguity thereto. It would seem somewhat strange that lands ceded, or otherwise dedicated to and for public uses as streets, should take a different direction, and the title thereto, if it passed out of the original owners, become vested in the purchasers of the lots fronting to and bounded by the same, and not in the corporation of the city. But which ever rule should be applied to such ceded and dedicated lands, whether the title thereto continues in the original proprietors or vests in the owners of the lots fronting to the same, or in the corporation of the city, the trusts of them are the same—they are to be and continue for ever public streets and avenues for the convenience and accommodation of the owners of tenements and lots bordering upon them, and the use and benefit of the public at large. How then could these plaintiffs, in any aspect of the legal title and ownership of the land subject to these public uses and trusts, be entitled to, or claim compensation for, those lands as belonging to them, and as being required and taken for public uses? The lands forming the streets wherein the tracks of the railroad are laid, have not been taken, and are not required to be taken for the construction of the road; they are used, and the rails laid down upon them for the railroad, by the permission of the corporation

of the city, to whom the lands, subject to the trust for public uses of them, belong, or at any rate, the right and duty of regulating them appertains. They still continue streets, for the use, benefit and accommodation of the plaintiffs, and their fellow citizens, and the public at large. A leading use and purpose of a public street is for travellers and others to pass and repass on and over the same, with horses, carriages and other vehicles, and on foot. All parties must concur in that definition, as applicable to the right of way over the public streets of the city; and does not the railroad, with its cars propelled by the application of steam, or by animal power, come equally within the definition, as the cart, carriage or omnibus drawn by animals? It is a new mode of using the street, but it is still an use of it for passing and repassing through it, with a vehicle for the carriage of passengers and of goods and freights; and the use of the street by cars with passengers is equally in the exercise of the acknowledged right thus to traverse the street with carriages as the use of them by other vehicles for similar purposes. But the plaintiffs controvert the validity of the assent of the corporation to the defendants to lay down the rails and run the trains of cars through those streets; and insist that the operations of the defendants in that respect are unauthorized, and acts of trespass upon the public rights. The act of incorporation, it is said, requires them to obtain the consent of the corporation of the city, and makes that assent a condition precedent, and indispensably necessary to the right to locate their tracks on the public streets, and use the same for the purposes of their railroad; and it is denied that any valid assent of that body has ever been obtained for that purpose. It is conceded that a resolution has been passed by both boards of the common council, and approved by the mayor of the city, purporting to give the assent of the corporation thereto, but the plaintiffs insist that such assent, to be valid and operative, must be given by a law, or by a resolution having the force and effect of a law of the corporation, and that by the amended charter of the city, recently adopted, a majority of all the members elected to each board of the common council must concur in the passage of a

law, to make it effectual ; and it is admitted that a majority of all the members elected to each board of aldermen did not agree to the passage of this resolution.   By the 4th section of the act entitled an act to amend the charter of the city of New-York, passed April 2d, 1849, it is, among other things, enacted that each board may originate, amend, concur in, or reject, any law, ordinance, or resolution, but no *law* shall pass either board except by a majority of the members elected.   The resolution giving to the defendants the assent of the corporation to lay the rails and run their cars from West-street through Canal and Hudson streets to Chambers-street, did not pass the board of aldermen by a majority of the members elected ; the number of members elected being eighteen, and the resolution passing by a vote of eight members in the affirmative, against five in the negative.

If, then, this amended charter was in operation at the time the vote was taken on this resolution ; and that resolution was a law within the meaning of that provision of the act, and if the assent of the corporation to the location of the railroad in a public street, must, to be effectual, be by a law of the corporation, then as the assent of the corporation was not given to the defendants to locate their railroad in a public street of the city, the location of the same in Canal and Hudson-street, was unauthorized, and without the assent of that body.   But to this the defendants' counsel reply ; first, that the legislative powers, under the amended charter, do not commence, and are not to go into operation until January next, and that the assent now given is to be by the corporation as it existed before and at the time the amendatory act was passed.   And secondly, that the resolution giving the assent was not a legislative act or law requiring a majority of the members elected, to pass it.   I do not stop to examine these antagonistical allegations and claims ; or to inquire whether the provisions of the old or the new charter apply to the case ; or whether, by the true construction of the new charter, a resolution is identical with a by-law, and requires the same formalities and sanction to make it effectual.   A by-law is a rule or law of a corporation for its government.   It is an act of legislation, and the solemnities and sanction required by

· Drake v.The Hudson River Railroad Co.

the charter for its passage must be observed.   A by-law may be in the form of a resolution, and require the same solemnities to pass it; but a resolution is not necessarily a by-law.   It may be the mere assent of the corporation to an act of a private citizen, operating upon its property or affecting its corporate rights or franchises, or a license to a citizen to use property or to exercise a privilege.   Why not to the use or exercise within its limits, of rights, powers or privileges conferred upon a party by the legislature on condition of obtaining such assent of the city government?   Can such assents be in any just sense of the expression termed or deemed laws or acts of legislation of equivalent character?   A corporate body, whether specially vested with the power of legislation or not, has inherently the power to make necessary rules for its government and operations, and the right to assent to rightful, and ratify or confirm unauthorized acts of others affecting its interests, whether favorably or unfavorably.   That consent may be manifested by some act of the body corporate, or by its acquiescence in the acts of others.   A joint resolution, simply embodying and expressing the consent to be given, would seem well adapted to the purpose, and a formal by-law not to be necessary.

But if a by-law was necessary, or if we assume the resolution before us to be, within the meaning of the city charter, an ordinance or by-law, and to be ineffectual and inoperative for want of the assent of the corporation thereto, by reason of the failure in the board of aldermen of a majority of all the members elected, to pass it, what consequences ensue?   The railroad company in such case will have located their railroad, and laid down their rails in Canal and Hudson streets, without the assent of the city corporation thereto.   Who have they injured, and whose rights have they violated, by their unauthorized acts?   Who has a right to complain of the proceeding, and to require the offenders to desist and remove the rails?   I assume that the soil of the streets is vested in and belongs to the corporation of the city, subject to a trust for the public use of them as public streets of the city, or that to them alone appertains the exclusive right of the charge and regulation of the same.   The plaintiffs, then,

Drake *v.* The Hudson River Railroad Co.

can not complain of the defendants, and treat them as trespassers upon the lands or premises, nor require that compensation should be made to them for the lands within and forming part of those streets.

The corporation of the city, as the owners of the legal title to the soil of the streets, if they be so, are the parties alone whose rights of property are violated, or whose ownership may be said to be usurped, and who may claim the right to have the rails removed, or the use of the street vindicated and freed from the alledged incumbrance, or the proceedings of the company arrested until compensation shall be made for the grounds they occupy. The city corporation impute no wrong to the railroad company in their locating their railroad in those streets, and take no steps for the removal of the rails as having been laid down without authority. They acquiesce in the acts of the company, and tacitly give their assent to the operation.

But the plaintiffs say that the tenements and lots fronting to the streets, and in the vicinity of them, are injuriously affected by the railroad, and claim that they were entitled to a just and adequate compensation for the loss and damage they thus sustained thereby, before the defendants could have had the right, or can be allowed by law to lay down or continue the tracks of rails in those streets; and they insist that the said tracks of rails ought on that ground to be removed, and the continuance of them prohibited by the order or injunction of this court until such compensation shall be made.

By the act of 1848, further to amend the act to authorize the construction of a railroad from New-York to Albany, the Hudson River Railroad Company is authorized to enter upon, take, and use all such lands, real estate and property, as may be necessary for the construction and maintenance of the said railroad, and the convenient accommodations appertaining thereto, but compensation to be made for the land, real estate, and property thus taken and used, and not voluntarily given to nor purchased by the company in the manner therein directed; and the act then provides, that whenever the said corporation shall not have acquired, by gift or purchase, any land, real estate or

property, so required as aforesaid, or which may be affected by any operation connected with such construction and maintenance, the same may be taken and acquired by them, and the compensation to be made to the owners and parties interested, ascertained and certified in the manner and by the process therein prescribed. Now these provisions, it will be observed, are calculated and intended for enabling the defendants in cases where the lands, real estate or property required for the railroad, can not be obtained by gift or purchase, but must be taken adversely to the owners, or without their consent, to have the damages and compensation assessed and admeasured, which they are required and bound to pay and make to the owners and parties interested, for the lands, real estate and property so to be taken for the construction of their railroad, under and in virtue of the right of eminent domain residing in the sovereignty of the state. They are inapplicable to cases of mere consequential damages by the railroad constructed and made on land belonging to the railroad company, or which they are permitted and allowed, by the owners and proprietors of them, to use for the location of the railroad, and the laying down of the rails thereon, to the lands and premises of other persons to which no direct injury or damage is done thereby, or by any operation connected therewith. When lands are required for the location and construction of the railroad, which can not be obtained by purchase, and must be taken without the consent or against the will of the proprietor, the principle and rule of necessity which the right of eminent domain alone can justify, must be applied, and the amount of compensation must be ascertained and certified, and must be paid to the parties entitled thereto, or deposited in bank for them, under the authority of the act and the approval of the court, before the land can be taken or used, or any entry, other than for surveys and examinations thereof, can be made thereon ; and in such cases the defendants are authorized and allowed, and it is a benefit to them, to have the compensation ascertained which they are to make, as well for the lands required to be taken, as also for the damages to other lands by the operation connected with the rail-

road; to the end that they may, on payment of the sums assessed thereupon, be discharged from all claim for or on account thereof. But when the railroad company own the lands on which they locate their railroad, or have the license and permission of the proprietors thereof to locate the road thereon, they have a full and perfect right to use the same for that purpose, in the same manner and to the same extent that they might rightfully use them for any purpose, and to lay down the track of rails and run their trains of cars over the same by right of the title and ownership of the land or license to occupy and use it, and they are under no restraint or control of others in their use thereof, and bound only to the observance of the benign and salutary rule and injunction of law so to use their own as not to injure the property or premises of others, or to injuriously affect them as regards their property, personal safety, health, or business pursuits. But it is contended that the acts authorizing this railroad, contemplate and require that compensation be in all cases made to the owners and parties interested in any land or property which may be injuriously affected by any operation connected with the said railroad, for the damages thereby to such lands and premises so affected. And that such damages are to be ascertained by appraisement, and to be paid to the parties entitled thereto, before the railroad can rightfully be constructed, or the rails laid on the line or route selected and designated for the same. That the plaintiffs are entitled to compensation for any loss or damage they may sustain from the railroad, or any of the operations connected therewith, is not denied. And whenever, and as often as any such loss or damage may arise or accrue from any such cause, the plaintiffs, or such of them as may sustain the same, will have their remedy therefor by action at law against the defendants. The right and privilege granted to them by the legislature to construct their railroad on such line or route as they may select, and to lay down rails and run trains of cars thereon, will not protect them from the claim of those whom they may wrongfully injure or aggrieve by their operations, for redress, nor be any defence to actions against them for damages from any such

Drake *v*. The Hudson River Railroad Co.

cause, by the parties aggrieved. But the plaintiffs insist that they are not bound to wait until the loss or injury the railroad, or any operation connected therewith, is to inflict upon them, is actually incurred, but that the same is so certain to happen, and will necessarily, if permitted, be so permanent and disastrous to them, and has already been so sensibly, though as yet but partially felt, that they are entitled to the preventive remedy of an order or injunction of this court interdicting the same and the further continuance thereof. We will not say that direct and immediate injuries by this railroad, or any operation connected therewith, though located, by consent, in a public street of the city, to buildings or lands contiguous or near to the railroad track, if such injuries be irreparable or permanent, would not be within the scope of the provisions of the act, and the defendants be required to make previous compensation for the same. Nor will we say that they might not be restrained from any operation connected with their said railroad, injuriously affecting any such buildings or lands, or from the continuance thereof, until such compensation had been first ascertained and made, under and in pursuance of the provisions of the act for the ascertainment of compensation to parties interested for injuriously affecting their lands and property; and that such would be the regular course in such cases may perhaps be by a liberal construction, inferred from the provisions of the act. But it would not follow, from such construction, that contingent future damages, or indirect and consequential injuries of indefinite amount, not capable of estimate, would come within the rule, and there are many and weighty reasons against extending it to them. Now, are not the injuries of which the plaintiffs complain, of that character? They complain that the use and benefit of the streets, to them, will be impaired by the partial occupation of those streets by the railroad tracks; that the value of the tenements and lots fronting thereon, for business operations, is diminished by the alledged impediment of the rails to the crossing of the streets, and the obstruction thereby of the free passage on and along the same with carriages and by foot passengers; and they suggest also, and complain of the probable desertion of their stores and

Drake v. The Hudson River Railroad Co.

shops by their customers, by reason of the difficulties and danger of access to them ; and in addition thereto, they anticipate and complain of the inconvenience and annoyance to themselves and their families and friends from the perpetual running of the cars and other operations of the railroad.   Numerous affidavits are introduced by the plaintiffs to sustain these charges, and they are met by affidavits on the part of the defendants repelling them, and representing the railroad not only as free from objections, but as being a valuable improvement, useful and desirable to the city and the citizens.   Upon these conflicting affidavits we are asked to form our conclusions upon the questions of fact involved in the controversy, whether the railroad, in its occupancy of a portion of the centre of the two streets, and in its operation, is liable to the objections preferred against it, as productive of the evils to those within its immediate influence which are ascribed to it, or is unjustly subjected to these injurious charges.   The utility of the railroad as a great public improvement, and a vast convenience and accommodation to the city and the public at large, admits of no question ; but these considerations can not authorize or justify its encroachment upon the rights of any portion of our citizens.   The interests of the individual whose property may be injuriously affected, must not be sacrificed to the success of the improvement because it is desirable and of value to the public ; but he is to be indemnified and fully compensated for his loss or damage thereby, by the public, or by the company, which profits by the improvement.   And the questions are, what evils these plaintiffs do endure, and what damage they sustain by this railroad, and in what manner these evils are to be remedied or alleviated, and just compensation made for the damages which they may sustain.

The plaintiffs have a right to the full and free use of the street on which their tenements front, for access to their dwellings, and for the convenience and accommodation of their residences and business pursuits ; but they can claim no greater right or interest in the streets than such full use and benefit of them as public streets.   All other citizens have an equal right

with them to such use thereof, as public streets, and the railroad company, as part of that public, have the same right in common with others, to use the same, under the rules and regulations prescribed to them by the proper authority in the premises, for the purposes to which the lands forming the streets were dedicated to the public, or taken by the corporation for public purposes. The tracks of the railroad are laid thereon, for enabling their cars to pass and repass on and along the same, for the carriage of passengers and the transportation of goods and freights, and such is the acknowledged use and purpose of all public roads or highways. It is a new mode of using the public street or way, but it is nevertheless, a mode of using it. We agree that the lands forming the streets were dedicated to the public, or vested in the corporation of the city as and for public streets, to pass and repass over the same with horses, carriages, and vehicles of every description, as well as on foot, and as well for the use of those occupying tenements fronting to the same for access to their dwellings and tenements, and the accommodation of their business operations, as also for the common use of all others having occasion to use the same as public streets or highways. But we can not agree that the plaintiffs, or those from whom they derive their title to their lots, acquired or possess any special right to, or interest in the said streets, or the lands forming the same, beyond, or in exclusion of other citizens, except only that from the circumstance of their tenements and lots fronting upon the streets, they participate more largely of the use of them, and receive greater benefit and advantage therefrom than other citizens whose tenements or lots do not front thereon. Nor can we agree that the dedication of those streets to public uses, or the acquisition of them by, and the vesting of the legal title to them in the corporation of the city, was upon any trust or purpose that the use and mode and manner of using them should for ever be and remain such as the same then were, or in the language of the complaint, " in the usual and accustomed manner of using and passing upon public streets in cities, in use at the time of such dedication or acquisition of them, as and for public streets; " but our conclusion is, that the same

were so dedicated to public uses, and so vested in the said cor-poration upon trust that the same should be kept open as public streets for the use of the citizens of the said city of New-York, for ever, in the manner in which streets then were, or should at any time thereafter be beneficially used by lawful authority, for the purposes of public city streets.   The regulation of the streets we understand to be vested in the common council of the city, and that the manner and mode of using the same for the pur-pose and conformably to the trusts of the same, is to be pre-scribed and directed by them.   That power, rightly exercised, while it keeps the streets open to the use of all carriages and vehicles accustomed to use them, will allow any new species of carriage or vehicle, or improved mode of conveyance of greater convenience and speed to participate in the use of the same, and the street, or a suitable portion of it, to be adapted, as far as the legitimate purposes thereof as a street will permit, to such new mode of using it—not that important changes should be lightly made, but new and improved modes of use may, and in the dis-creet and prudent exercise of the power, always will be adopted and applied, whenever the public interest may require it, and the same can be done consistently with the trust of the street for the public use of the citizens, and without encumbering the streets to the prejudice of other citizens, or precluding them from any rightful use thereof, or injuriously impairing such use there-of by them.   Railroads are of recent introduction, but their great and acknowledged advantages over all other modes of travel and land carriage, have gained for them a popularity which have brought them into extensive use, and are constantly yet further extending their adoption.   The actual existence of them in other cities, and the example of the Harlem Railroad in our own city, which has now been in successful operation for several years under our own eyes, conclusively show that the use of them in the streets of a city, if properly guarded and reg-ulated, is compatible with the trusts of public streets, and the simultaneous use of those streets by other carriages and vehicles, and for all the purposes to which public streets are dedicated. And the corporation, with a prudential care and regard to the

rights and interests of the citizens, have passed an ordinance for the government and regulation of this railroad in the use of the streets wherein they are permitted to locate the same, to which the company are bound, and may be compelled, to conform. To the corporation application for relief against abuses of the privileges the defendants enjoy, may at all times be made, and by that body all existing grievances, or future grievances, or grounds of 'complaint, capable of remedy or redress, may, and we trust always will, receive early attention, and the proper remedies be promptly applied.

But the plaintiffs alledge and complain that obstructions are created by and consequent upon the permanent location of the Hudson River Railroad in the streets whereon their tenements front, and the appropriation of parts thereof for the tracks of rails laid or intended to be laid thereon, which will exclude, or so unreasonably circumscribe, the use thereof by them, the plaintiffs, in the usual manner, as to constitute a direct invasion of their rights as owners of said lots, and to be wholly inconsistent with the objects of the original dedication of those portions of the said streets to public uses, and they insist that such appropriation of said parts of the streets to the use of the defendants, is a purpresture, and the rails so laid, and the use made thereof by the defendants, are, and will be, a nuisance. If these representations are correct, the charges founded upon them would be just, and the plaintiffs entitled to redress, for the rules of law do not tolerate either purpresture or nuisance in or upon a public street or highway. But do these tracks of rails create or cause a purpresture on any part of these streets ? or is the use of them by the cars running upon them, in any just sense of the term, a nuisance ? A purpresture is the encroachment by any person, by building or otherwise, on a street or some part of it, or such an enclosure, impediment or obstruction of it thereby, as to amount to the exclusion and hindrance of the citizens and the public from the full and beneficial use and enjoyment of it as a public street. There is no charge against the defendants of any encroachments by actual enclosure of any part of either of these streets for the uses or purposes of the railroad ; but they alledge

Drake *v.* The Hudson River Railroad Co.

that heavy iron rails are intended to be laid, and are in part laid upon and along the centre of Canal-street, from West to Hudson-street, and upon and along the centre of Hudson-street, from Canal to Chambers-street, for the double track of said railroad, enclosing within the rails so laid 16 feet in width of the middle of said streets; but which allegation they qualify and explain, to mean that the heavy iron rails are designed and intended by the defendants permanently to remain upon and occupy and encumber said portion of said streets, and to be used by the defendants only, and not by the owners of lots fronting to the streets, or by the public; and they further alledge, that the defendants intend to use, upon each of the said tracks, cars and carriages propelled by steam or otherwise, of the width of about nine feet each, and in great numbers, so that from the width of the cars and carriages, and the length and number thereof, the manner of using the rails, will partially exclude the owners of lots fronting upon the streets, and the public, from the beneficial use and enjoyment of the same for the purposes of a public highway or street, or for the individual trade or commerce of the occupants of the lots fronting thereon. And it is further stated in the complaint, or the affidavits accompanying the same, that the species of rails the defendants use, and intend to use, is a very heavy bar, not even with the surface of the street, and not the flat bar, on a level with the surface. And that the dangers and difficulties of crossing such rails with carriages and other vehicles, and the insufficiency of the spaces on each side of said tracks, alledged to be too narrow for carriages to pass each other therein, are such, that if the running of the cars and carriages of the defendants on their said tracks should not amount to a constant and uninterrupted use thereof, and to an entire exclusion of others therefrom, it will most unreasonably circumscribe them, the plaintiffs, in the use of said streets, to their great and manifest prejudice, and in violation of their just rights as such owners of lots, in and to the full beneficial use of said streets. To these points the affidavits of the witnesses on the part of the plaintiffs chiefly apply. Those witnesses testify to their opinions adversely to the railroad, as being an encroach-

Drake *v.* The Hudson River Railroad Co.

ment upon the rights of the plaintiffs, and of other citizens— an inconvenience to them in the use of the streets, and an hindrance or annoyance to those whose lots front said streets, in their business occupation and pursuits, by deterring customers from frequenting their shops and stores, or impeding the access and approach thereto. Some of them express fears of danger from the cars, and refer to accidents they state to have happened : and many of them speak of the apprehended decline of business and rents in consequence of the presence of the rails in the street, and the obstructions and annoyances they occasion to passengers ; and those injurious or unfriendly effects of the rails upon the streets, and those who have occasion to use them, they chiefly ascribe to the difficulty and danger of crossing the track with carriages, and the insufficiency of the space on each side of the track for carriages for passing and repassing in and along the same, supposed by them to render the streets impassable, or nearly so, by other carriages at the same time with the running of the cars upon the track, which they anticipate to be in almost constant motion on the track, and thereby occupying it almost exclusively. That rails illy laid in narrow streets may occasion many of these inconveniences is not denied, but in streets of the width of Canal and Hudson streets, they probably will not exist, or be but partially felt. Canal-street is 100 feet in width, and Hudson-street, in some places, 85, and in others 90. None of the objections peculiar to tracks in narrow streets can be applicable therefore to the railroad in question ; and if some inconveniences and annoyances nevertheless attach to it, they are believed not to be of sufficient magnitude to call for the aid of this court to enjoin its operation, and direct the removal of its rails, especially upon ex parte affidavits in the present stage of the controversy. Not that the complaints of individuals are to be disregarded, or the interests of any class or portion of citizens sacrificed to improvement, trenching on their rights, for the use or benefit of the community. Private rights are at all times and under all circumstances to be respected, and as far as practicable protected ; and if private property of any description is at any time required for public use, or im·

Drake *v.* The Hudson River Railroad Co.

provements in which the public is interested, the public at large, or those specially benefited by the improvement, are to make full and ample compensation to those who suffer or are injured thereby, for the loss and damage they sustain. This rule is of universal application : it is engrafted in the constitution of the state, and its observance is obligatory upon the legislature who enact laws, and on the courts which expound and administer them. But in acting upon it, and carrying out the principle, while lands and real estate are not to be taken for public improvements, nor injuriously affected by them, nor vested rights of fixed and determinate value, susceptible of estimate and ascertainment, divested or injuriously invaded, without just and adequate compensation first made to the owners and parties interested therefor ; yet desirable improvements of public utility, and beneficial inventions of general interest, are not to be rejected, suppressed or arrested, simply because they may in their operation and practical effect occasion to property in their vicinity or within the sphere of their action, some contingent or consequential damage. For these, when they occur, the party aggrieved has a remedy by action at law, and by a repetition of such action, during the continuance of the grievance, whenever and as often as loss or damages ensue, and with the ulterior remedy which in case the presence of the tracks in the streets, or the running of the cars upon them, or other operations of the railroad, should be or become a nuisance, or the aggression shall prove to be permanent and without an adequate remedy by action, this court will be competent to administer its equitable relief by injunction to prevent its continuance, or for its removal ; but a much stronger case must be presented, and the impending danger more imminent and more impressive than this complaint, and these affidavits, show, to justify us in the application of these severe and coercive measures as precautionary and preventive remedies.

EDWARDS, J. The first ground upon which ·the plaintiffs claim to be entitled to the interposition of the court is, that the state had not the legal power to delegate to the defendants, the

right to take and use the property of individuals, in the construction of a railroad.

In the case of *Bloodgood* v. *The Mohawk and Hudson Railroad Company*, (18 *Wend.* 9,) this question was elaborately considered, and it was held, not only by all the members of the court for the correction of errors, who delivered opinions, but it was also expressed in the form of a resolution, which embodied the opinions of a large majority of the court, that the state had the constitutional power to authorize the taking of private property for the purpose of making railroads and other public improvements of a like nature, on paying the owner of such property a full compensation therefor, whether such improvements were made by itself, or through the medium of a corporation or joint stock company.

That the state, in the exercise of the right of *eminent domain*, has the power to appropriate the property of individuals, for the safety or manifest advantage of the public, upon making just compensation, was never denied. It is an inherent attribute of sovereignty. And, if the state itself can do so, by its direct and immediate action, it would seem that it must necessarily follow that it can do so through the instrumentality of others, whether corporations or individuals. But the delegation of this right must be accompanied with such restrictions as will protect the rights of those whose property may be taken.

It was said, however, upon the argument, that the decision in the case of *Bloodgood* v. *The Mohawk and Hudson Railroad Company*, although made by the highest court then known in this state, was not binding upon us as authority, because the question which was there decided did not necessarily arise upon the pleadings before the court. In this I disagree with the counsel. It appears, by reference to the report of the case, that the question as to the constitutional power of the legislature to authorize the taking of private property for the use of a railroad, upon making just compensation to the owner of the property taken, was considered both by the counsel who argued the cause, and the court which decided it, as the principal question for adjudication. It was clearly raised by the demurrer of

Drake *v.* The Hudson River Railroad Co.

the plaintiff to the defendants' plea.  The plaintiff declared in trespass *quare clausum fregit*.  The defendants pleaded that they entered the plaintiff's close for the purpose of constructing their railroad, as they lawfully might do.  The demurrer to this plea, of course, made it an issue, and the only issue, whether the defendants were legally authorized to do the act complained of; that is, whether, in the first place, the state had conferred upon them the authority which they claimed the right to exercise; and, in the next place, whether it had the constitutional power to confer such authority.

The next ground taken by the counsel for the plaintiffs was, that the defendants had no right to appropriate private property for the use of the railroad, without first making compensation therefor; or, in other words, that the right of the owners of property to compensation was a condition precedent to the right of the company to take their property.  In the case of *Bloodgood* v. *The Mohawk and Hudson Railroad Company*, above cited, this question was also fully and thoroughly examined and considered, and a provision for compensation, similar to the one contained in the charter under which the defendants in this suit were incorporated, was considered a condition precedent.  It is true that in that case the clause of the charter which required the compensation to be made, was expressed in the form of a proviso.  But it was not upon that ground that the court founded its decision.  It was upon the higher ground, that, unless the provision should be regarded as a condition precedent, the act would be unconstitutional.

The question then arises, whether any property owned by the plaintiffs has been taken and appropriated by the defendants to the use of their railroad without just compensation having first been made.

By reference to the complaint, it appears that previous to the year 1797, the corporation, known as the Rector and Inhabitants of the city of New-York, in communion of the Protestant Episcopal Church in the state of New-York, were owners in fee simple of a large tract of land, on parts of which portions of the street, now known as Hudson-street, were laid out, and

that such portions of the land as were laid out into a street were dedicated to the public as such.   It also appears that afterwards, and on the 20th June, 1797, they conveyed a part of the land thus laid out into streets to the mayor, aldermen and commonalty of the city of New-York, in trust that the same should be kept open for the use of the citizens of said city for ever.   And afterwards, on the first day of December, 1813, they made a similar conveyance of the remaining portions of the land laid out into a street as above stated.

It is contended, on the part of the plaintiffs, that when the Rector and inhabitants of the city of New-York, in communion of the Protestant Episcopal Church in the state of New-York, conveyed or leased the lots bounded upon those portions of the land which had been dedicated as a street, they also conveyed or leased the land dedicated for a street opposite to such lots, *ad medium filum viæ*, subject only to the public easement; (*see Hammond* v. *McLachlan*, 1 *Sand. Rep.* 323 ; *Child* v. *Starr*, 4 *Hill*, 369 ;) and that, according to the rule laid down in the case of *The Trustees of the Presbyterian Society in Waterloo* v. *The Auburn and Rochester Railroad Company*, (3 *Hill*, 569,) inasmuch as the right of the defendants to the use of the street for a railroad track was an easement peculiar to themselves, the owners of the fee in the street were entitled to compensation ; and that before such compensation was ascertained and paid, the defendants had no right to use the street for a railroad track.

It appears from the complaint, that the property of all the plaintiffs whose lots lie contiguous to Hudson-street, with the exception of Susannah Drake, consists of leasehold estates which commenced in the year 1849.   These persons, then, have clearly no claim for compensation ; for the fee of the street had been conveyed to the corporation of the city of New-York long before any interest had been conveyed to them.

As regards the lot owned by Susannah Drake, it does not appear from the complaint when her title to it was acquired.   It appears, however, from the deed of conveyance under which she now holds, and which was exhibited on the argument, that

Drake v. The Hudson River Railroad Co.

her title did not accrue till the 30th of December, 1823, which is also long subsequent to the date of the conveyances executed to the corporation of the city of New-York. But it is said that she formerly held under a lease which had been executed previous to the time when the land opposite to her lot was conveyed to the city. It seems from the abstract which has been furnished to us, that on the twentieth day of January, 1804, a lease of the lot now owned by Mrs. Drake was executed to Adam Tredwell and Stephen Thorn for the term of ninety-nine years from the 25th March, 1804, and that after a number of mesne assignments, it was assigned to herself, and three other persons, on the 27th of December, 1820. Whether the lease was cancelled at the time when the deed of conveyance was executed to Mrs. Drake does not appear. But, as between herself and the corporation, known as the Rector and Inhabitants of the city of New-York, in communion of the Protestant Episcopal Church in the State of New-York, the relation of landlord and tenant, of lessor and lessee, must have ceased. She could no longer hold under the lease. The title which she then acquired was founded on the conveyance, and commenced at the time of its execution. That conveyance could embrace no other property than that which the grantees had the right to convey at that time, which must exclude the fee in the street, which had been previously conveyed to the city of New-York.

But it is contended that although the property of the plaintiffs has not been taken for the purposes of the railroad, yet that it has been injuriously affected, and that the defendants have no right to lay a railroad track, which shall injuriously affect the property of any person, without first making compensation for the injury. Admitting that the property of the plaintiffs has been injuriously affected, still there is no constitutional provision which can restrain the defendants from making their road until compensation is made to the parties injured; neither does the charter of the company require that such compensation be made, as a condition precedent to the right to make the railroad. The company has the right, in order to protect itself against future litigation, to apply for the appointment of commissioners

Drake *v.* The Hudson River Railroad Co.

to ascertain what compensation shall be made. If it does not choose to do so, it will subject itself to a suit on the part of those who are injured; or in case of irreparable injury which is incapable of being compensated in damages, this court will be bound to interfere by injunction. The complaint, and affidavits annexed to it, do not set forth a case of irreparable injury. On the contrary, it seems to me that they do not show a case in which the company would be bound to make compensation.

Whatever the rule of compensation should be for injuriously affecting the property of any person, it ought not, according to any sound principle of law, to extend beyond the rule of damages which would be adopted in an action against the company; that is, the damage which is the natural and proximate consequence of the act complained of. The affidavits do not set forth any facts from which we can infer certain and inevitable damage. They state circumstances from which we can infer inconvenience to the plaintiffs; but not inconvenience amounting to that species of injury which the law will take notice of.

The next question to be considered is, whether the use of Hudson-street by the defendants, for a railroad track, is such an exclusive appropriation of the street as amounts to a nuisance. It appears from the complaint that subsequently to the conveyance by the Rector and Inhabitants of the city of New-York, in communion of the Protestant Episcopal Church in the state of New-York, to the corporation of the city of New-York, of that tract of land which now constitutes a portion of Hudson-street, and in pursuance of the act of 1813, and for the purpose of carrying out the object for which the land was conveyed, the same was opened and laid out as a public street. It follows, then, that not only the plaintiffs in this suit, but the public generally, have the right of free and unobstructed passage and repassage over the street as a public highway. And if its use for a railroad track deprives them of such right, they are entitled to the relief sought in this suit.

It has been held both in this state, and in other states of the Union, that a railroad is not *per se* a nuisance. (*Hamilton* v. *The New-York and Harlem Railroad Company,* 9 *Paige,*

Drake *v.* The Hudson River Railroad Co.

171.   *Lexington and Ohio Railroad Company* v. *Applegate,* 8 *Dana,* 289.)   The use of a street for a railroad consists merely in adapting its surface to a particular mode of conveyance; and when so adapted the running of a railroad car is no more an exclusive appropriation of the street, than the running of any other species of conveyance would be.   If the additional facilities for passage and repassage which a railroad furnishes, will have the effect of increasing the use of the street, and thus cause some inconvenience to persons doing business, or residing in its neighborhood, yet if it is not diverted from the purposes for which it was opened and laid out, no right of any person will be violated.   Neither will there by any infringement of private rights if the track itself should cause a slight change in the surface of the street, provided the passage is free and unobstructed.   The affidavits on the part of the plaintiffs, it is true, contain the opinions of many respectable citizens, that the value of property adjoining Hudson-street will be materially diminished by its use for a railroad.   On the other hand, the affidavits on the part of the defendants contain the opinions of citizens of equal respectability, that no such consequences will follow.   But it does not appear from any of the affidavits submitted on the part of the plaintiffs, that the right of passage and repassage will be obstructed or abridged.   The most that they state is that the street will be rendered less convenient for the ordinary purposes of a highway.

The next question which was raised upon the argument is, whether the corporation of the city of New-York have assented to the use of Hudson-street for the purposes of a railroad.   By the charter under which the defendants were incorporated, it is provided that "the directors of the company may locate their railroad on any of the streets or avenues of the city, westerly of and including the Eighth avenue, and on or westerly of Hudson-street, provided the assent of the corporation of such city be first obtained for such location.   (*Laws of* 1846, *p.* 274.)   It appears from the complaint, that a resolution passed both boards of the common council, and was signed by the mayor, authorizing the defendants to lay a double track of rails through Hud-

Drake *v.* The Hudson River Railroad Co.

son-street, subject to certain specified regulations. It also appears that such resolution passed the board of aldermen by a vote of eight members, which is less than a majority of the whole members elected. By the amended charter of the city of New-York, passed April 2, 1849, it is provided that no law shall pass either board, except by a majority of the members elected. Two questions were raised upon the argument. First, whether this provision of the amended charter goes into effect before the 1st of January, 1850; and second, whether an *assent* on the part of the corporation comes within the definition of a *law*. With the view that I have taken of this branch of the case, I do not consider it necessary to decide either of these questions.

It will be observed that, as far as the right of the defendants to lay a railroad track upon certain streets in the city of New-York is concerned, the legislature have not delegated to them the exercise of the right of eminent domain. In respect to the right to use the streets of the city, the legislature have not assumed to interfere with the controlling power with which the corporation of the city is invested, for the regulation of its public streets and highways.

The corporation of the city, as the legislative body having the power, and whose duty it is, to regulate streets for the public benefit, unquestionably has the power to assent to the use of Hudson-street for the purposes of a railroad, provided no private rights are violated—and it also has the power to refuse such use. But if it neither assents, nor refuses, and no private rights are violated, this court would not be authorized to interfere upon the application of a private individual, and prevent what the corporation of the city, which alone has a right to act in the matter, does not object to. Whether the assent of the corporation has been given in the legal form or not, it is sufficient, as far as this suit is concerned, that it has not dissented, and that none of the private rights of the plaintiffs will be violated.

With these views I am of opinion that the motion for an injunction should be denied.

Drake *v*. The Hudson River Railroad Co.

EDMONDS, J.   If the injuries to the plaintiffs' property, enumerated in the affidavits, are real, and not merely imaginary, I see no difficulty in the way of a court of law's affording compensation for them in a proper suit brought for that purpose.   It may very well be that they may not be the subject of assessment and appraisement in advance, and can only be properly ascertained afterwards, as experience may demonstrate them, and define their exact character and extent.   But that is not, in my opinion, any reason against the defendants' proceeding in their erections.   The prohibition of the constitution is against taking private property without compensation, and not against injuries to such property, where it is not taken.   In this case, the private property of the plaintiffs is not taken by the defendants, but the whole allegation is, that it is injured by erections in its vicinity; and the plaintiffs have not, therefore, any claim to have their damages ascertained and paid for before such erections shall be constructed or used.

The case then presents itself to us in this form—that the defendants are injuring the property of the plaintiffs, bounded on a street, by erections in the street, and the demand is, that we enjoin them from doing this injury.   Now, in such case, it seems to me that the law is well settled that an injunction can not go.   In the case of *Hart* v. *Mayor of Albany*, (9 *Wend.* 580,) our court for the correction of errors examined the doctrine very much at large, and laid down what I understand to be the settled doctrine, that an injunction will not go, except in cases of great and irremediable mischief, which damages could not compensate, because the mischief reaches to the very substance and value of the estate, and goes to the destruction of it in the character in which it is enjoyed.   There is no injury complained of in this case, which can not be compensated in damages.

There is, however, another ground on which an injunction in such cases may be granted, namely, to prevent the multiplicity of suits; and it might be in this case, that the parties might be subjected to many suits before they should receive full compensation.   But this difficulty is obviated by the statutes incorporating the defendants, and amending its act of incorporation.

All the damages which the plaintiffs may sustain from the defendants' erections may be ascertained at once, by the appointment of commissioners of appraisement. And I understand the provision of those statutes authorizing an assessment of damages to land which may be affected by any operation connected with the road, to be intended purposely to meet this difficulty, and to enable the defendants by one act, and at one time, *uno flato*, to make all this compensation, and not merely to enable them to do the act, which may injuriously affect lands not taken. There need then be no multiplicity of suits; for all the damages can be ascertained and settled in one proceeding, as to any land which may be injuriously affected by any operation connected with the road.

Thus, both the grounds on which alone is founded the practice of granting an injunction in such a case, are wanting in this suit. And this motion must be denied.

Motion denied.