(18 Misc. Rep. 269.)

MERRIMAN v. UTICA BELT LINE ST. R. CO.

(Supreme Court, Special Term, Onondaga County. October, 1896.)

1. STREET RAILROADS—CONSENT TO CONSTRUCTION.
   Where a proposed street railroad will pass only part of property, the value of that part only should be considered on a question of compliance with Laws. 1892, p. 2093, § 91, which makes the consent of the owners of half in value of the property "bounded on * * * that portion" of a street where a street railroad is projected necessary before its construction.

2. SAME—PROPERTY CONSIDERED.
   Property which practically fronts on a street on which a railroad is projected should be considered in determining whether enough property owners in value to authorize the construction of the railroad have consented thereto, though the property might be strictly considered as fronting on another street which runs into the one in question.

3. EXECUTORS AND ADMINISTRATORS—POWERS.
   An executor cannot consent to the construction of a railroad in front of property of his testator's estate, unless the will vests in him title to the real estate.

4. STREET RAILROADS—ENJOINING CONSTRUCTION.
   A property owner is entitled to an order restraining the unauthorized construction of a street railroad along the street on which his property is located; but, where such order would impede public interest, its operation will be restricted to the block on which his property is located.

Action by James Merriman against the Utica Belt Line Street-Railroad Company to restrain the construction of an electric railroad.

along the street on which plaintiff resided. A preliminary injunction was granted, and defendant moves to vacate it.

William Kernan and John W. Boyle, for the motion.
William Townsend and E. H. Wells, opposed.

HISCOCK, J. This suit and the right to have this motion denied and the injunction herein maintained rest upon a twofold claim by plaintiff: (1) That proper and sufficient notice by publication in newspapers has not been given of the proceedings before the common council of the city of Utica, leading up to the consent by said council to the construction and maintenance of the road in question; (2) that defendant has not obtained the consent of one-half in value of the property bounded on that portion of Whitesboro street upon and through which it proposes to construct and operate its said railroad. The conclusions at which I have arrived upon the second ground above stated make it unnecessary for me to consider the first one.

The affidavit of John H. Grant, made and read in behalf of defendant, upon this motion, states that the total amount of taxable property fronting on the street through which it is proposed to construct said railroad, according to the last proper assessment roll, is $78,600, of which one-half would be $39,300. On account of the views hereinafter expressed in regard to certain real estate, these figures should be reduced as follows: Total valuation by the sum of $17,077, making $61,523, of which one-half would be $30,761.50. It is insisted in said affidavit that certain equitable reductions, amounting to about $4,000, upon the assessed valuation included in the above total, should be made for the purposes of this action. Under the views which have been taken, this reduction, if made, would be immaterial. I do not think, however, that defendant is entitled to have it made. Among the assessed valuations which enter into the foregoing total of $78,600, and which also are included in those for which defendant takes credit in this action upon the question whether it has secured one-half, are the following: Utica Steam Engine & Boiler Works, $31,500; Agatha Reith estate, $700; Tavender Soap Works, $2,500; Childs' Carriage Works, $5,000. I do not think that defendant has secured such consents covering said pieces of property as entitle it to such credit therefor. The real estate of the Utica Steam Engine & Boiler Works is situated upon the northerly side of Whitesboro street, opposite the junction of said street with Lafayette street, through which the proposed railroad is to enter the former street. It is not entirely clear at just what point, opposite said real estate, the proposed railroad will enter Whitesboro street. The affidavits submitted upon this point, as well as upon some others, are somewhat conflicting, and not as entirely clear as might be. One of the maps submitted in behalf of the defendant indicates that the line of said road would strike the southerly line of Whitesboro street 42 feet westerly from the southeasterly corner of said real estate upon Whitesboro street. The franchise granted by the municipal authorities of Utica, however, describes

the line of said road as running through Lafayette street into Whitesboro street, which, in the absence of some evidence to the contrary, would lead me to assume that the road would follow the center line of Lafayette street.   Assuming this to be so, such center line of said street, and therefore the proposed line of said railroad, would strike the southerly boundary of Whitesboro street at a point which, according to plaintiff's affidavits, is only about 120 feet easterly of the southwesterly corner of said real estate. That this is substantially correct is indicated by the affidavit of Mr. Edick, who made defendant's map already referred to, and who swears that said real estate "will front on and be opposite said proposed railroad on Whitesboro street for a distance of about 130 feet." Dividing the distance between these figures thus given by the respective sides, there would be a frontage of said real estate upon the proposed line of said railroad of about 125 feet.   The entire frontage of said real estate upon said street is stated in defendant's affidavits to be about 273 feet, leaving 148 feet of the frontage easterly of that portion of Whitesboro street at which the railroad will enter it.   Upon these facts, the question is presented whether defendant is entitled to the benefit of a consent in behalf of all of a piece of real estate, part of which is upon the line of the railroad, and part of which is not.   Defendant insists that it is.   This does not, however, seem to me to be the spirit or purpose of the provisions of law upon this subject.   When the statute provides that no street railroad shall be constructed or operated through a street except upon the condition that the consent has been obtained of owners of one-half in value of the property "bounded on * * * that portion of a street or highway upon which it is proposed to construct or operate such railroad," it seems to be clear upon this point, and to indicate an intention to give the property directly lying upon the line of the proposed railroad some voice in the question whether it shall be constructed.   The words used seem to indicate, as precisely and accurately as well could be, this intention, and to define and limit those who shall have such voice.   If it were to be held, as argued by defendant, that the entire valuation of a piece of real estate of which, perhaps, one foot was upon the proposed line of railroad, and an indefinite number of feet off and beyond its line, could be voted in behalf of the construction of such railroad, the apparent purpose of the statute to give some local voice and control in these matters to property owners would seem to be pretty well overturned.   Neither would there seem to be any great—certainly no insuperable—obstacle to properly apportioning the valuation of a piece of real estate between those portions, respectively, which did and did not lie upon the proposed line of railroad, even though upon the assessment rolls such valuation was all included in one sum.

Entertaining these views, it would seem to me, defendant is only entitled to the benefit of that 125 feet of frontage of said piece of real estate which lies upon that portion of Whitesboro street involved in this action.   No definite or very satisfactory evidence has been given by which to apportion the entire valuation of $31,500 between the different parts of the lot.   I have simply been able arbi-

trarily, for the purposes of this motion, to appraise said real estate at so much per foot of frontage upon Whitesboro street on the entire assessed valuation, which would give a value to that portion of the premises lying westerly of the point where the railroad will enter Whitesboro street of $14,423, and cause a reduction in the value for which defendant has taken credit of $17,077. This apportionment certainly cannot do defendant great injustice if, as suggested by plaintiff's affidavit, $5,000 of the $31,500 is upon the rolls assessed to frontage of this property upon another and side street. There seems to have been no authority whatever upon the part of John Reith to give consent to the valuation of $700 above mentioned. Under the provisions of the will relating to the Tavender estate, F. J. Maynard, executor, would seem to be without authority, alone, to sign for that real estate. Independent of the other provisions of the will, there seem to be several other executors; and, in the absence of any explanation, I should think that the action of a majority of them would be necessary upon a question of this kind.

It was insisted by plaintiff that defendant could not be credited for the consent obtained upon the carriage works, situate at the corner of Wiley and Whitesboro streets, and assessed at $5,000, for the reason—First, that the person giving such consent was unauthorized to do so; and, second, that said property did not front upon Whitesboro street, but upon the line of Lafayette street continued into said former street.

So far as the second ground is concerned, I think it is not sufficient. Very likely the southerly boundary of Lafayette street, continued into Whitesboro street, would technically and strictly pass by the front of this property; but I believe that a broader and less technical interpretation was intended for the statute providing for the consents of property owners than would be answered by holding as urged by plaintiff upon that fact. If this property is not entitled to be counted in behalf of the construction of such proposed railroad, it could, of course, not be counted against it, and would therefore have no voice upon the question. The railroad is to run past it in what, for all practical purposes, is one unbroken street, and it would seem reasonable to give its owners some voice in the question of its construction.

The other ground, however, seems well taken. The only consent given in behalf of this property is by one Howarth, as executor of the will of one Catharine Vidvard, former owner. An examination of such will does not seem to establish that the executor is vested with the title to this real estate, or an "owner" of it, as required by the statute. Chamberlain v. Taylor, 105 N. Y. 185, 11 N. E. 625.

| | | |
|---|---:|---:|
| Deducting from the total of consents claimed by defendant of | | $51,400 |
| Utica Steam Engine & Boiler Works | $17,077 | |
| Reith estate | 700 | |
| Tavender estate | 2,500 | |
| Carriage works (Vidvard estate) | 5,000 | |
| | | 25,277 |
| And the consents remain of | | $26,123 |

—Or considerably less than the amount required.

Assuming the facts above determined, and that defendant has not obtained the consent of one-half of the property in question, including that owned by plaintiff, defendant further urges and insists that plaintiff still should not be allowed to maintain this action to enjoin the construction of said road.    I have assumed, as it seemed to be conceded upon the argument, that plaintiff does not own the fee of one-half of the street in front of his premises, and that his rights are simply those of an abutting owner extending to the line of the street. Upon even this assumption, however, he would seem to be entitled to the rights sought by him, and denied by defendant upon this motion.    If defendant has not obtained the requisite consent of the property owners, it is absolutely without right to lay the rails, erect the poles, and string the wires for, and to operate, its electric road through Whitesboro street.    It is a trespasser, and I presume that defendant would not contend for a moment that the city intrusted with the ownership and care of said street could not enjoin and stop it from such a proceeding.    The only question is whether plaintiff has any such personal and special interest in its proposed wrongdoing and trespassing as will permit him to stop it.    The spirit of the law upon this question, as I understand it, would seem to be entirely in favor of his having the power so to do.    The right to property owners upon a street of having some voice in the construction of a street railroad through it was deemed important enough so that it has been secured by the constitution, the language of which upon this subject was substantially repeated in the statute.    This right and these provisions of the constitution and statute would seem to be of little use or avail if a railroad, having secured consent merely of the general municipal government, could push its line through a street without securing the contemplated consent of property owners, and without being subject to any proceedings in their behalf to stop it because of such failure.    Furthermore, upon the facts as they are outlined in the affidavits upon this motion, the court might well find that the tracks and poles and electric wires and cars, running at a comparatively high rate of speed, without proper authority, would be a public nuisance, and that a property owner past whose premises they were put and went suffered such special inconvenience as would entitle him to maintain private suit and injunction.

This right for a failure to comply with the statute under discussion, and upon facts similar to this case, seems to have been assumed fully and without question in McDermott v. Railroad Co., 85 Hun, 422, 32 N. Y. Supp. 884, and Secor v. Village of Pelham Manor, 6 App. Div. 236, 39 N. Y. Supp. 993.    The authorities urged in behalf of defendant, and which decide against the right of a plaintiff to have injunction, are based upon facts different from those which exist in this case.    For instance, the case of Drake v. Railroad Co., 7 Barb. 508, especially referred to, involved simply the right of an adjoining owner who did not own the fee to recover for incidental damages resulting from the construction of the railroad in the street, "under authority of the law, and with the permission of the city authorities."    See Fobes v. Railroad Co., 121 N. Y. 513, 24 N. E. 919.

These views lead to the conclusion that plaintiff is entitled to an injunction, and that this motion to vacate the same should not be granted. It is true, however, as claimed by defendant, that the granting of an injunction at the commencement of a suit is a power to be exercised with discretion and care, and, if possible, in such manner as will reasonably protect the plaintiff's rights, and not unnecessarily interfere with those claimed by defendant. Technically, if I am right, plaintiff would probably be entitled to an injunction restraining the construction of defendant's road in any part of that portion of Whitesboro street under discussion. It is said, however, that, on account of the contemplated paving of the street and other reasons, such an order would result in unnecessary embarrassment, not only of defendant, but of public interests. On the other hand, plaintiff's rights will probably be adequately protected by restraining the construction of the road in front of the block in which he lives, and the injunction order heretofore granted should be modified to that extent.

Ordered accordingly.