child, unlike an adult witness, is held for her own good, as well as in the interests of society and the enforcement of the criminal laws. She is not, within the meaning of the constitutional provisions relied upon, deprived of her liberty at all, but rather, for her own welfare, she is intrusted temporarily to the care and custody of a society organized for such and kindred purposes, and recognized as a state agency.

The writ should be dismissed, and the child remanded to the custody and control of the respondent.

(48 Misc. Rep. 162.)

### FOX et al. v. NEW YORK CITY INTERBOROUGH RY. CO.

(Supreme Court, Special Term, New York County. August, 1905.)

STREET RAILROADS—CONSENT TO CONSTRUCTION—STATUTORY PROVISIONS.

Railroad Law, Laws 1890, p. 1108, c. 565, § 91, provides that a street surface railroad shall not be built unless the consent of the owners of one-half of the assessed value of the property "bounded on" the street shall have been obtained. Property relied on toward making up the one-half of the value of the property abutting on a street on which a railroad was contemplated consisted of an entire block fronting on the street and extending 800 feet to a street in the rear. The block was improved and used for an academy, and was assessed as a single tract. *Held*, that the manner of assessing the property did not deprive the court of the power to determine what part of it should be deemed as "bounded on" the street, and in determining the voting power of the tract it should neither be taken as a whole nor regarded as a tract fronting on the street and extending back 100 feet but the court should make such an apportionment of the value thereof as would result in giving justice to the railroad company and an objecting property owner.

Action by Frederick P. Fox and another against the New York City Interborough Railway Company. Motion for an injunction pendente lite to restrain defendant from constructing a street railroad. Granted.

Niles & Johnson (W. W. Niles, of counsel), for the motion.

Strong & Cadwallader (George W. Wickersham and Noel Gale, of counsel), opposed.

GIEGERICH, J. An injunction is sought by the plaintiffs, owners of property abutting on the street in question, to restrain the defendant from continuing the construction of a railroad through such street. The ground of the application is that the consents required by statute have not been obtained. The requirements referred to are contained in section 91 of the Railroad Law (Laws 1890, p. 1108, c. 565), which, among other things, provides as follows:

"Sec. 91. Consent of Property Owners and Local Authorities.— A street surface railroad, or extensions or branches thereof, shall not be built, extended or operated unless the consent in writing acknowledged or proved as are deeds entitled to be recorded, of the owners, in cities and villages, of one-half in value, and in towns, not within the corporate limits of a city or village, of the owners of two-thirds in value, of the property bounded on, and also the consent of the local authorities having control of that portion of a street or highway upon which it is proposed to build or operate such railroad shall have been first obtained.  *  *  *  "

One of the pieces of property relied upon and included by the defendant toward making up the "one-half in value" required by the statute is a large plot, occupying an entire block, having a frontage of 534 feet on the street in question and running back between the two streets on either side a distance of over 800 feet to the street in the rear. The block is owned by the Ursuline Convent, which maintains thereon an academy and chapel, located approximately in the center of the block. The sole use made of the property is for the purposes of such academy. The entrance, both for carriages and for pedestrians, is upon the street in question. The grounds, so far as improved, are devoted to lawns, shrubbery, groves, gardens, and such other purposes as are incidental to the uses of the school conducted by the convent as a boarding and day school. The question is whether the entire assessed valuation of the block can be included for the purpose of making up the one-half in value required by the statute above quoted, or whether only such proportion of such assessment as represents the part of the property abutting on the street in question should be included.

On behalf of the motion the claim is made, as I understand it, that only the front of the tract to a depth of 100 feet should be reckoned in, giving such lots the value of similar unimproved lots on adjacent blocks. This method would be obviously unfair, however, because, if followed out on all the streets bounding the block, it would leave entirely out of account an interior piece, over one-half in area of the entire block (comprising all that was more than 100 feet back from the several streets), and on which are located all the buildings. On the other hand, to include the entire assessment would, I think, be equally unfair in the other direction, and give this property undue voting power on an important proposition which concerns especially the property immediately fronting the proposed railroad and having a frontage on no other street. It is not reasonable to construe the statute as meaning that an entire block, merely because held in one ownership, is entitled to be voted for its full value on all four streets bounding it, while a neighboring block, held in several ownerships in the usual way, would have only a fraction of that voting power. Such a construction would give the owner of such a block approximately four times the voting power of other owners and in four different places. Such an extreme inequality was surely never intended by the law. It would be totally subversive of the principle of equal representation on which the statute is based. It would place it in the power of the owner of a solid block to dominate the neighborhood and force a railroad upon one street and exclude it from another, notwithstanding the unanimous desire to the contrary of owners of a greater aggregate frontage on the several streets concerned.

On the other hand, I realize the practical difficulties in making any accurate apportionment of the assessment, especially in a case of this kind, where the property is not vacant, but is improved in a measure and is occupied as an entity, and is consequently more or less affected, and directly affected, for better or worse, by what-

ever happens on any of the four streets by which it is bounded. Too much weight ought not to be given, however, to the condition of the property at the time of the obtaining of the consents. As said in Tiedemann v. Staten I. M. R. R., 18 App. Div. 368, 370, 46 N. Y. Supp. 64, 65:

"The statements in those affidavits were in reference to the situation as it then appeared, and in view of the location of the two houses on the premises. This may not always so continue. * * * The manner in which the description is given in the assessment roll is a matter of no moment. Nor is the necessity of procuring consent limited to the street on which the property may front, when it is also bounded on another street in which the construction of a railroad is proposed. The frontage of premises bounded on two or more streets may not in some places be the same or so limited for all time in the future as it is or hitherto has been."

In the case just quoted from the question now in issue was referred to, but dismissed without consideration, as not presented by the facts. It was there said (page 370 of 18 App. Div., page 65 of 46 N. Y. Supp.):

"It is unnecessary to inquire whether land bounded upon a street may extend so far back from it that the remote portion may not be deemed included in that so bounded for the purposes in question. Such a suggestion is not applicable to the property on the north side of Hyatt street. As represented by the ownership, it is in two parcels. That on the west, adjacent to Stuyvesant street, is owned by one Norvell, and that on the east, adjacent to St. Mark's Place, is owned by the plaintiff. The depth of each of those parcels north from Hyatt street is less than its depth from those other streets, respectively, as represented by the plat in the motion papers. In the common acceptation of the words 'property bounded on' a street, it is difficult to see how this owned by Norvell and the plaintiff can be denied that relation to Hyatt street, or how in that respect any part of such property can be taken out of the operation of the statute applicable to that relation to such street, for the purpose of establishing the prerequisite condition of consent of the owners to the right of the defendant to proceed to the construction of its railroad there."

The dimensions of the lots referred to are not stated in the report, but to make that case parallel to this as respects the point under consideration we should have here a strip along East 200th street, the street in question, having the frontage of 534 feet and a depth of less than half that amount, or say 250 feet, instead of a depth of over 900 feet on the one side and over 800 on the other, as is actually the fact. As just said, the dimensions are not mentioned in that case, and for aught that appears the depth may have been much less than 250 feet. That decision may be regarded as an authority for the proposition that a corner lot of ordinary dimensions may be counted in for its full appraised value on the street from which it has the least depth and in which it is proposed to build a railroad, in computing whether the requisite consents have been obtained. It may be remarked in this connection that there is no apparent unfairness in allowing the owner of a corner lot of dimensions not exceeding the average, say 100 feet by 100, to vote the full assessment of his property on each street. Such increased voting power is based, not on ownership of a plat of exceptional size, but on the fact of location, and is a right possessed by every owner of a corner lot, however small.

On behalf of the defendant it is further argued, since section 91, quoted above in part, provides that "the value of the property above specified shall be ascertained and determined by the assessment roll of the city, village or town in which it is situated, completed last before the local authorities shall have given their consent, except property owned by such city, village or town, or by the state of New York, or the United States of America, the value of which shall be ascertained and determined by making the value thereof to be the same as is shown by such assessment.roll to be the value of the equivalent in size and frontage of the adjacent property on the same street or highway," that not only must values be ascertained and determined in accordance with the values found upon the assessment roll, but the subdivisions into which property is divided upon such assessment roll afford the only guide for determining what shall be included and what shall be excluded, and that so long as the parcel is bounded upon the street to be occupied and is found upon the assessment roll it must be included as assessed in the computation both of the total value and of the value of the property whose owners have consented. I cannot accede to such a proposition in the breadth in which it is stated. It would deprive the courts of the power of determining what land is to be deemed as "bounded on" the street in question, within the meaning of the statute, and also of making any apportionment of an assessment as laid and as appearing on the roll. In Merriman v. Utica Belt Line St. R.R., 18 Misc. Rep. 269, 41 N. Y. Supp. 1049, it was held by Mr. Justice Hiscock that such apportionment could be made, and he made it, in a case where a piece of property having a total frontage of 273 feet was assessed in a single sum, but the railroad passed in front of only 125 feet thereof, leaving a balance of 148 feet before which it did not pass. The learned justice apportioned the total assessment of $31,500 in the ratio of 125 to 148, allowing the railroad $14,423 and rejecting $17,077, admitting that such apportionment was arbitrary, but at the same time remarking that it could not do the defendant (railroad) great injustice "if, as suggested by plaintiff's affidavit, $5,000 of the $31,500 is upon the rolls assessed to frontage of this property upon another and side street."

In the present case the figures are such that it is not necessary to enter into any niceties of valuation or computation in making an apportionment. An approximation can be made, somewhat arbitrarily and roughly it may be, but one that will err, if at all, in favor of the defendant, and yet give a result in favor of the plaintiffs. Taking the defendant's figures, the total assessed valuation of the property bounded on the route in question is $552,000, of which it claims to have obtained the consent of owners of $302,000. The block in question is assessed at $175,000. Assuming that $120,000 worth of this block at the front is so situated that it ought to be represented in the voting, there remains $55,000 worth in the rear not entitled to be so represented, being several hundred feet distant from the street in question, and also being near to and abutting upon the rear street and the two side streets. Rejecting this latter por-

tion from any consideration at all, and deducting $55,000 from $552,000 and $302,000, respectively, we have remaining $497,000 as the total valuation and $247,000 as the total for which consents have been obtained, being less than the required one-half.　As before said, the situation is such, as shown by the above figures, that it is unnecessary to enter into any fine details of appraisal and computation to determine the relative value of front and rear, and just how far back from the front a line should be drawn so as to leave $120,000 in value in front and $55,000 worth in the rear.　It is evident that it would be so far back as to leave the defendant no just ground of complaint, as it would receive the advantage of voting on the proposition in controversy the value of much land in the interior of the block several hundred feet back from the street in question and much other land far back from such street and immediately adjacent to the two side streets.

The motion should be granted, with $10 costs.　If the defendant deems that additional security should be required, that question will be determined upon the settlement of the order, of which two days' notice shall be given.